OPINION OF THE COURT
Joseph Harris, J.
PARTIES
Petitioner New York Association of Convenience Stores (NYACS) is a not-for-profit corporation representing the collective interests of over 3,000 convenience stores that sell cigarettes, motor fuel, and other products in the State of New York. A purportedly significant number of NY ACS’ member convenience stores adjoin or are in close proximity to Indian reservations and compete with on-reservation Indian retailers on sales of their products.
Petitioner National Association of Convenience Stores (NACS) is a nonprofit trade association representing nearly 1,500 retail companies operating over 65,000 convenience stores throughout the United States. A large number of its member convenience stores are located in New York State, and many of same compete with on-reservation Indian retailers.
The two individual corporate petitioners, M.W.S. Enterprises, Inc. and Sugarcreek Stores, Inc. are incorporated in and under the laws of the State of New York, are both members of NYACS and NACS, operate numerous stores in close proximity to diverse Indian reservations in the State of New York, and compete with on-reservation Indian convenience stores in the sale of cigarettes, and other tobacco products and motor fuel. An allegedly significant portion of the merchandise sales of the convenience stores owned and operated by the corporate petitioners derive from the sale of cigarettes and other tobacco products, and motor fuel.
Respondent Department of Taxation and Finance of the State of New York, and respondent Urbach as Commissioner of said Department, are statutorily charged with, among other things, determining, assessing, collecting and enforcing all taxes imposed by the Legislature of the State of New York, including articles 12-A, 20, and 28 of the Tax Law, which include excise and sales taxes.
*908 GENERAL ISSUE
In this CPLR article 78 proceeding, petitioners allege a system-wide failure on the part of respondents to perform their statutory and regulatory duties (1) to enforce article 20 of the Tax Law and 20 NYCRR part 336, which require them, in part, to determine, assess, collect and enforce all applicable cigarette excise and sales taxes on sales of cigarette and tobacco products sold by on-reservation Indian retailers to non-Indians, and (2) to enforce articles 12-A and 28 of the Tax Law and 20 NYCRR part 414, which require them, in part, to determine, assess, collect and enforce all applicable excise and sales taxes on motor fuel sold by on-reservation Indian retailers to non-Indians.
The instant article 78 proceeding is in the nature of mandamus to compel respondents to fulfill their statutory, regulatory, and nondiscretionary obligations to enforce the applicable cigarette and motor fuel taxes on the sale of cigarettes and motor fuel by on-reservation Indian retailers to non-Indians. Petitioners allege that respondents’ failure to enforce the aforesaid tax statutes and regulations severely impairs the economic viability of off-reservation convenience stores, that the enforcement of said statutes and regulations against petitioners while at the same time failing to enforce same against such sales by on-reservation Indian retailers to non-Indians, is a denial of the due process and the equal protection of the laws that are constitutional rights of petitioners under the United States Constitution and the Constitution of the State of New York, and costs the State of New York to lose in excess of $100,000,000 per year (see, letter of Commissioner Urbach, dated Mar. 27, 1995).
Respondents move to dismiss the petition for alleged lack of standing. The latter is the particular issue before the court at this time.
FACTS
At the time of the commencement of this proceeding, the State of New York had imposed a 56-cent excise and sales tax on every package of 20 cigarettes, except those sold under circumstances in which the State is without power to tax. (Tax *909 Law § 471 [1]), and an 8-cent excise and sales tax on the sale of a gallon of gasoline.[1]
These taxes are paid by the purchase of stamps which are affixed to the cigarette package as a prerequisite to the first taxable sale by a wholesaler or distributor. The tax is then added to the selling price of the cigarettes along the distribution chain and is ultimately added to the retail price charged to the retail customer.
Pursuant to Federal law, Indians and Indian tribes are exempt from State taxation within their own territory and, therefore, may purchase unstamped cigarettes. Non-Indian purchasers of cigarettes from on-reservation Indian retailers are required to pay the excise and sales taxes.
Historically, on-reservation Indian retailers made little or no attempt to collect these taxes from non-Indian purchasers. Indeed, former Tax Commissioner Wetzler in 1992 stated that the failure to collect taxes on the sale of cigarettes and motor fuel to non-Indians "is the largest single form of tax evasion we’re aware of’ (Wall St J, July 20, 1992).
In 1988 the Tax Commissioner adopted regulations for enforcement of collection of taxes from non-Indian purchasers of cigarettes from on-reservation Indian retailers. 20 NYCRR part 336 (1) permits on-reservation Indian retailers to purchase an unlimited number of taxed cigarettes from their wholesale suppliers and thereafter recover the tax from their non-Indian purchasers, and (2) permits Indian retailers to purchase a certain amount of untaxed cigarettes from their wholesale suppliers for resale to Indians. New York tax regulations limit the quantity of untaxed cigarettes that wholesalers may sell to Indian tribes and tribal retailers on a tax-free basis. (20 NYCRR 336.6 [a].) Said tax regulations further require wholesalers to collect taxes on all nonexempt sales and to keep records evidencing the identity of each tax-exempt sale. (20 NYCRR 336.6 [g].) Said tax regulations further permit Indian retailers to sell tax-free cigarettes only to qualified Indian consumers who have established their tax-exempt status with proper proof. (20 NYCRR 336.6 [e] [2]; [g] [1].)
In Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61 [1994]), the United States Supreme Court held that *910 cigarettes sold in New York by on-reservation Indian retailers to non-Indians are taxable, and that New York’s statutory and regulatory scheme relating to the sale by on-reservation Indian retailers to non-Indians is valid and enforceable.
There is currently no legal impediment whatsoever to the determination, assessment, collection and enforcement of cigarette and motor fuel excise and sales tax on sales to non-Indian purchasers by on-reservation Indian retailers. Yet, contrary to the New York tax laws and regulations, wholesale distributors continue to sell tax-free cigarettes to on-reservation Indian retailers in excess of the amount permitted by law and on-reservation Indian retailers continue to advertise and sell tax-free cigarettes and tobacco products to non-Indians at retail in violation of the tax laws and regulations.
Corporate petitioners allege that they have suffered substantial and continuing economic injury, and have been, and are, competitively disadvantaged by the unlawful sale of tax-free cigarettes and motor fuels by on-reservation Indian retailers to non-Indians. A like claim is made by the associational petitioners on behalf of their membership.
MOTION TO DISMISS — LACK OF STANDING
General Rules
The general rules establishing "standing” are historically defined, summarized and justified in Society of Plastics Indus. v County of Suffolk (77 NY2d 761).
Under the common law, there is little doubt that a " 'court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected’ ” (Society of Plastics Indus. v County of Suffolk, supra, at 772 [citations omitted]).
"Whether derived from the Federal Constitution [limiting the judicial function to cases or controversies, and prohibiting advisory opinions] or the common law, the core requirement that a court can act only when the rights of the party requesting relief are affected, has been variously refashioned over the years. Once a 'legal interests’ test requiring a litigant to allege injury to a legal interest derived from common or statutory law [citation omitted], 'injury in fact’ has become the touchstone during recent decades (Data Processing Serv. Orgs. v Camp, 397 US 150, 152-153; Matter of Dairylea Coop, v Walk *911 ley, 38 NY2d 6, supra). The existence of an injury in fact — an actual legal stake in the matter being adjudicated — ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute 'in a form traditionally capable of judicial resolution.’ (Schlesinger v Reservists to Stop the War, 418 US 208, 220-221.) The requirement of injury in fact for standing purposes is closely aligned with our policy not to render advisory opinions (see, Cuomo v Long Is. Light. Co., 71 NY2d 349, 354) * * *
"To this essential principle of standing [injury in fact], the courts have added rules of self-restraint, or prudential limitations: a general prohibition on one litigant raising the legal rights of another; a ban on adjudication of generalized grievances more appropriately addressed by the representative branches; and the requirement that the interest or injury asserted fall within the zone of interests protected by the statute invoked [citation omitted; emphasis added]. It is the last of these limitations, adopted at both State and Federal levels, that has evolved into the crucial test for standing in the administrative context [see, Matter of Dairylea Coop, v Walkley, supra].
"The zone of interests test, tying the in-fact injury asserted to the governmental act challenged, circumscribes the universe of persons who may challenge administrative action. Simply stated, a party must show that the in-fact injury of which it complains (its aggrievement, or the adverse effect upon it) falls within the 'zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision and upon which the agency has acted (Lujan v National Wildlife Fedn., 497 US [871, 883].)” (Society of Plastics Indus. v County of Suffolk, supra, at 772-773.)
In Federal and State law as well, the requirement that a petitioner’s injury fall within the concerns the Legislature sought to advance or protect by the statute "assures that groups whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purposes.” (Society of Plastics Indus. v County of Suffolk, supra, at 773; see also, Clarke v Securities Indus. Assn., 479 US 388, 399.)
"In land use matters especially, we have long imposed the [further] limitation that the plaintiff, for standing purposes, must show that it would suffer direct harm, injury that is in some way different from that of the public at large.” (Society of Plastics Indus, v County of Suffolk, supra, at 774.)
*912 The burden of establishing "standing” to challenge administrative action is on the party seeking to assert "standing.” (Society of Plastics Indus. v County of Suffolk, supra)
Thus, in summary, to have "standing” to review, the petitioner must be able to demonstrate (1) injury in fact; (2) such injury must be within the zone of interests for which the statute or regulation was intended; (3) the injury alleged must be of a kind or degree different from that of the public at large.
The foregoing same general principles of standing apply whether the party seeking relief is one person or an association of persons. "In the area of associational or organizational standing, the applicable principles are embodied in three requirements (see, Matter of Dental Socy. v Carey, 61 NY2d 330). First, if an association or organization is the petitioner, the key determination to be made is whether one or more of its members would have standing to sue; standing cannot be achieved merely by multiplying the persons a group purports to represent. Second, an association must demonstrate that the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests. Third, it must be evident that neither the asserted claim nor the appropriate relief requires the participation of the individual members”. (Society of Plastics Indus. v County of Suffolk, supra, at 775.)
Thus, assuming that the three principles mandated by Society of Plastics Indus. (supra) have been met (injury in fact, different in kind or degree from that of the public at large, within the zone of interests intended by the statute which is the fulcrum of the case), it is crystal clear that both the individual and associational petitioners would have the right to assert such standing.
But there is a giant quantum leap that must first be made to validate the aforesaid assumption. There, is no question but that the petitioners have been, and continue to suffer injury infact by the selective enforcement of the subject tax laws by respondents — enforced as against petitioners but not as against their competitors, on-reservation Indian retailers selling to non-Indians. There is no question but that the nature of this injury in fact is different in kind or degree from that being sustained by the public at large. The inaction of respondents respecting collection of taxes, and other administrative duties, on sales of cigarettes and motor fuel by on-reservation Indians to non-Indians deprive the general public of tax revenues; petitioners are deprived not only of the benefits of general tax *913 revenues, but of the competitive economic benefits that would inure to them if they and on-reservation Indians selling to non-Indians were made by respondents to compete on a "level playing field.” Not as clear is it that petitioners are able to surmount the third prong of the general rule of "standing”— i.e., that the injury in fact being suffered by petitioners as a result of the defalcations of respondents in failing to determine, assess, collect and enforce the taxes herein involved from sales by on-reservation Indians to non-Indians is within the zone of interests intended by said tax laws and regulations, which basically are revenue producing laws — but something more: An attempt to fairly recognize Indian tribal sovereignty to the extent required by international law, to lessen the competitive disadvantage imposed thereby upon petitioners and thereafter to maximize the flow of general revenue.[2] The inquiry, however, with respect to "standing”, cannot be ended until analysis of the effect of the case of Matter of Dudley v Kerwick (52 NY2d 542), which establishes where the facts justify a "special” rule of "standing.”
MOTION TO DISMISS — LACK OF STANDING
Special Rule
The litigation in Dudley (supra), a CPLR article 78 proceeding, arose as the result of a dramatic increase in the number of parcels of land accorded tax-exempt status by the respondent Assessor of the Town of Hardenburgh in 1977. This increase was due to the enrollment en masse of 88% of the town’s landowners as officers in an allegedly religious denomination known as the Universal Life Church. All Universal Life Church members who sought an exemption received one. The petition alleged that the respondent Assessor informed the petitioner that if he failed to become a Universal Life Church follower he, along with 12% of the remaining landowners, would have to pay the full $500,000 annual governmental expense of the town. Petitioner Dudley alleged that he was advised by the Assessor that he, the Assessor, intended to accept and approve all exemption applications filed by members of the Universal Life Church and that should petitioner Dudley desire to join, he could do so at the town supervisor’s home. Dudley refused!
In holding that individual taxpayers may, by way of a CPLR article 78 proceeding, challenge wholesale religious exemp *914 tions from taxation granted to other property owners, even though they concede the propriety of their own assessments, the Court of Appeals stated: "The petitioners here have alleged far more than erroneous determinations regarding some of the property in the town. They accuse the assessor of virtually ignoring statutory guidelines in granting exemptions to Universal Life Church members. In this situation, if we hold he may do so with impunity, we would, in essence, give assessors unbridled authority to create new grounds for exemption as they please, by the device of warping those statutory exemptions presently in effect. It is axiomatic that the Legislature, not the assessor has authority to create grounds for exemption from taxation. When an assessor grants exemption from taxation in wholesale fashion indicating that he has arrogated this legislative power to himself, he cannot cloak himself with protection surrounding individual discretionary decisions, and relief by way of an article 78 proceeding will lie.” (Matter of Dudley v Kerwick, supra, at 551 [emphasis added].)
Translating the facts and principles of Dudley (supra) into the circumstances of the instant case, it becomes axiomatic that the Legislature, not the Commissioner of Taxation and Finance has the authority to create grounds for exemption from taxation (limited by the statute to taxes derived from retail sales by on-reservation Indians to non-Indians), and that respondents do not have the authority to determine, assess, collect and enforce the taxes involved herein against some nonexempt taxpayers, and not against others who are by the statute nonexempt. Simply said, respondents have no right, by inaction, to "exempt” from payment of cigarette and motor fuel excise and sales taxes mandated by the statute a class of persons and transactions not exempted by said statute.
The Legislature of the State of New York has demonstrated sensitivity for and recognition of the laws of nations in exempting on-reservation Indian cigarette and motor fuel retailers from the applicability of New York’s excise and sales tax laws on sales to non-Indians. The legality of the structure of New York’s excise and sales tax laws as it impacts upon retail sales by on-reservation Indians to non-Indians has been approved by the United States Supreme Court in Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61, supra). Failure of respondents to determine, assess, collect and enforce the cigarette and motor fuel excise and sales taxes generated by retail sales of said items by on-reservation Indian retailers to non-Indians is a legislative increase in the exemptions authorized *915 by the tax statutes involved. That is a legislative function, to be exercised by the Legislature, not by an administrative agency such as respondents. To enforce the tax laws only against petitioners and not against on-reservation Indian retailers on sales to non-Indians places petitioners at a competitive disadvantage with the latter, deprives the petitioners of their right to property without due process of law, and denies them the right to equal protection of the laws, both rights being guaranteed petitioners under both the Federal and State Constitutions.[3]
Following the holding of Matter of Dudley v Kerwick (52 NY2d 542, supra), the Supreme Court, Special Term, Albany County, in Matter of Campbell Oil Co. v Chu (Feb. 19, 1985), a proceeding essentially on all fours with the instant proceeding, accorded "standing” to petitioner as an individual taxpayer and competing business entity to challenge by a CPLR article 78 proceeding a wholesale exemption from the tax laws in effect granted by respondent Commissioner of Taxation and Finance through his inaction in failing to act or cause action to be taken to enforce the same tax laws as involved here, with respect to petitioner’s competitors, while enforcing same against petitioner.
CONCLUSION
By way of dictum, and in anticipation of any future argument by respondents that this controversy is not justiciable because the petitioner seeks to have the court interject itself into a complex area of policy making involving the exercise of judgment and discretion on the part of officers of the executive branch of the State government, the court notes that the thrust of the petition herein is not to oversee the method by which respondents undertake to enforce the tax laws, but merely to compel them to recognize, accept and perform mandatory duties imposed upon them by said laws. So framed, mandamus is a proper remedy, for the general principal is that mandamus will be against an administrative official only to compel him to perform a legal duty — not to direct how he shall perform that duty. (See, People ex rel. Schau v McWilliams, 185 NY 92, 100.)
It is no longer a sufficient answer merely to assert that "the activity contemplated on the State’s part may be complex and rife with the exercise of discretion” (Klostermann v Cuomo, 61 *916 NY2d 525, 530). That is a determination already made by the Legislature in exacting the specific tax laws involved. The Legislature has said: "There shall be an excise and sales tax on the retail sale of cigarettes and motor fuel!” It is the duty of the Commissioner of Taxation and Finance to enforce said law. The Legislature has said: "There shall be an exemption therefrom with respect to sales by on-reservation Indians to Indians and respondents shall determine, assess, collect and enforce all other excise and sales taxes not otherwise so exempted.” Neither difficulty of execution nor fear of violence can elevate the power of respondents over the Legislature with respect to the substantive mandates of the statute, nor enhance the authority of the Department of Taxation and Finance by inaction to grant additional exemptions.
For all of the foregoing reasons, and upon the principles of Matter of Dudley v Kerwick (supra), and in the interest of the furtherance of petitioners’ constitutional rights to due process of law and equal protection of the law, the court holds that petitioners have "standing” to bring this CPLR article 78 proceeding in the nature of mandamus to compel respondents to fulfill their statutory and regulatory duties (1) to enforce article 20 of the Tax Law and 20 NYCRR part 336 (to determine, assess, collect and enforce all applicable cigarette excise and sales taxes on sales of cigarette and tobacco products sold by on-reservation Indian retailers to non-Indians), and (2) to enforce articles 12-A and 28 of the Tax Law and 20 NYCRR part 414 (to determine, assess, collect and enforce all applicable excise and sales taxes on motor fuel sold by on-reservation Indian retailers to non-Indians). Accordingly respondents’ motion to dismiss the petition for lack of "standing” is denied.

. The statutory taxing scheme set forth above with respect to the excise and sales tax on cigarettes are paralleled elsewhere in the Tax Law with respect to motor fuels. The court will not track the specific sections dealing with motor fuels in this decision — the issue before the court being only that of standing — but rely, where necessary, on the same taxing scheme that governs excise and sales taxes on cigarettes.

. "[CJompetitive injury, of itself, will [however] not confer standing.” (Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 11, supra; see also, Matter of Blue Cross v Cooper, 164 AD2d 578.)

. One can imagine the hue and cry, and the resultant action by respondents, if petitioners decided not to pay the excise and sales taxes owed on sales by them in their convenience stores!