*209
 
 OPINION OF THE COURT
 

 Titone, J.
 

 The present appeal represents yet another chapter in the long-standing dispute over the enforcement of New York’s cigarette and motor fuel taxes as applied to sales made on Indian reservations located within the State. Having spent over a decade litigating its right to collect such taxes, the State Department of Taxation and Finance has recently changed course and adopted a policy of forbearance. This proceeding, brought by competitors of the Indian reservation retailers who have benefitted from that policy, seeks a judicial directive compelling the State to resume tax enforcement with respect to that group.
 

 Articles 12-A, 20 and 28 of the Tax Law impose sales and excise taxes on cigarettes and motor fuel sold within the State. In general, these taxes are collected through a system of prepayments and are then passed along the distribution chain to the ultimate consumers. Preemptive Federal law forbids collection of these taxes on goods sold on Indian reservations to enrolled tribal members (Moe
 
 v Salish & Kootenai Tribes,
 
 425 US 463, 483). However, when the goods are sold on the reservation to non-Indian consumers, the taxes may be collected
 
 (see, Washington v Confederated Tribes,
 
 447 US 134;
 
 Moe v Salish & Kootenai Tribes, supra).
 

 In 1988, the State Department of Taxation and Finance promulgated a series of administrative regulations to facilitate collection of sales and excise taxes on reservation sales. Under these regulations, Indian tribes, traders and on-reservation retailers were to be allotted a specific quantity of cigarettes and motor fuel for which the taxes had not been prepaid. The allotted amounts were to be based on estimates of the demand for otherwise taxable goods by reservation members
 
 (see,
 
 20 NYCRR 336.6, 336.7 [cigarette excise tax], 414.6, 414.7 [motor fuel excise tax], 435.1, 435.2 [diesel motor fuel excise tax], 561.17 [prepaid sales tax on motor fuel], 562.2 [prepaid sales tax on diesel motor fuel], 564.2 [prepaid sales tax on cigarettes]). The State’s efforts to implement these regulations were suspended, however, pending the disposition of litigation challenging their validity.
 
 [1]
 

 That litigation was finally resolved in 1994, when the United States Supreme Court held that the State’s regulations were
 
 *210
 
 not preempted by the Federal Indian Trader Statutes
 
 (Department of Taxation & Fin. of N. Y. v Milhelm Attea & Bros.,
 
 512 US 61;
 
 see,
 
 25 USC § 261
 
 et seq.).
 
 Having concluded that “Indian traders are not wholly immune from state regulation that is reasonably necessary to the assessment or collection of lawful state taxes,” the Court reasoned that New York’s system of collecting taxes “early in the distribution stream” and imposing a quota on untaxed goods available for sale to reservation members was an acceptable method of preventing tax evasion
 
 (id.,
 
 at 75). The Court stressed, however, that its analysis was limited to the particular challenge before it, which was “essentially a facial one,” and that its ruling did not address “each feature of New York’s tax enforcement scheme that might affect tribal self-government or federal authority over Indian affairs,” nor did it address the possibility that the State allocations of untaxed goods were not “sufficiently generous to satisfy legitimate [reservation member] demands”
 
 (id.,
 
 at 69).
 

 What occurred after the United States Supreme Court’s decision was handed down is described in affidavits submitted by several State officials responsible for intergovernmental policies relating to Indian nations and tribes. According to these affidavits, an Implementation Task Force that had been created in response to the decision issued Tax Department Notice N-94-16 (Sept. 1994), which stated that enforcement of the regulations approved in
 
 Milhelm Attea & Bros, (supra)
 
 would be delayed until the next sales tax quarter. The reasons given for this delay included the need to finalize the plan’s technical details, the need to assess the regulations against the “several potential legal obstacles to enforcement” that had been highlighted by the Supreme Court’s opinion and, finally, the pendency of “serious discussions with several Indian Nations regarding our respective sovereign, concerns.”
 

 The following quarter passed without implementation of the regulations. In August of 1995, several nonreservation convenience stores and their representative associations commenced the present proceeding. The petition sought an order directing the Tax Department “to immediately determine, assess, collect and enforce all New York State cigarette excise and sales taxes and New York State motor fuel excise and sales taxes applicable to on-reservation Indian retailers * * * and otherwise uniformly enforce New York State cigarette and motor fuel tax laws and regulations.” Petitioners alleged that both their own competitive interests and the interests of all New York State taxpayers were being impaired by the Tax Department’s differential enforcement of those taxes.
 

 
 *211
 
 Respondents promptly moved to dismiss the petition on the ground that petitioners lacked standing to assert their grievance. Supreme Court rejected respondents’ arguments, however, holding that petitioners’ standing could be upheld under the analysis utilized by this Court in
 
 Matter of Dudley v Kerwick
 
 (52 NY2d 542;
 
 see, Matter of New York State Assn. of Convenience Stores v Urbach,
 
 169 Misc 2d 906).
 

 Respondents’ next motion was one for dismissal on the ground that the controversy was not justiciable. Supreme Court treated this request for relief as a motion for summary judgment
 
 (see,
 
 CPLR 3211 [c]) and, reaching the merits, held that the Tax Department’s “failure to enforce the Tax Laws against some to whom they apply * * * is unconstitutional” and inconsistent with “ ‘a government of laws.’ ” The court directed equal implementation and enforcement of the tax laws “respecting sales of tobacco products and motor fuel by Indians to non-Indian retail consumers on Indian reservations,” granted the State a 120-day stay of that order and, finally, directed that collection of all cigarette and motor fuel sales and excise taxes be suspended if implementation did not occur by the end of the stay period.
 

 On appeal, a three-Justice majority at the Appellate Division agreed that petitioners had standing. However, the Court based its decision on the alternative theory that the favorable treatment afforded to businesses involved in on-reservation motor fuel and cigarette sales represented a “denial of equal treatment” and that this denial “established] petitioners’ standing” (230 AD2d 338, 343). Finding that the Tax Department’s differential enforcement policy was based upon the suspect classification of race, the Court went on to hold that none of the rationales for the policy that respondents had proffered was sufficient to satisfy the government’s heavy burden of showing that the policy was “ ‘ “both constitutionally permissible and substantial, and that its use * * * is ‘necessary * * * to the accomplishment’ of its purpose or the safeguarding of its interest’””
 
 (id.,
 
 at 342, quoting
 
 Regents of Univ. of Cal. v Bakke,
 
 438 US 265, 305). Accordingly, like Supreme Court, the Appellate Division majority held that the Tax Department’s nonenforcement policy was impermissible.
 
 [2]
 
 Respondents appealed as of right pursuant to CPLR 5601 (a) and (b) (1). We now
 
 *212
 
 conclude that the Appellate Division erred in applying the high degree of scrutiny reserved for governmental classifications based on race and other suspect classifications and that its order must be reversed.
 

 With respect to the threshold question of petitioners’ standing, we agree with the Appellate Division’s conclusion that their grievance was essentially an equal protection claim based on differential enforcement of the tax laws and that, as members of the disadvantaged class, petitioners have a right to seek judicial resolution of that claim (see,
 
 Regents of Univ. of Cal. v Bakke, supra,
 
 at 280-282, n 14 [opn per Powell, J.],
 
 cited with approval in Northeastern Fla. Ch. of Associated Gen. Contrs. v City of Jacksonville,
 
 508 US 656, 665). We find no merit in respondents’ contention that this standing theory is foreclosed because petitioners did not couch their grievance in equal protection terms. The petition itself reflected petitioners’ intention to assert an equal protection argument by seeking an order compelling respondents to “uniformly enforce New York State cigarette and motor fuel tax laws and regulations.” Moreover, as indicated in the affidavits submitted on respondents’ behalf, the question of whether the laws were “being equally applied to or enforced against different people, groups or entities” was raised during the oral argument on respondents’ motion. It was thus abundantly clear to the parties and Supreme Court that discriminatory enforcement and petitioners’ right to equal protection were at the heart of their claim.
 

 Turning to the merits, however, we reject the Appellate Division’s conclusion that the Tax Department’s failure to enforce the tax laws against a particular class of transactions, i.e., on-reservation sales to non-Indians, constitutes a form of race-based discrimination subject to the demanding “strict scrutiny” analysis. In
 
 Washington v Yakima Indian Nation
 
 (439 US 463, 500-501), the United States Supreme Court reiterated that “ ‘the unique legal status of Indian tribes * * *’ permits the Federal Government to enact legislation singling out tribal Indians” even where that legislation “might otherwise be constitutionally offensive”
 
 (accord, Moe v Salish & Kootenai Tribes,
 
 425 US 463, 479-480,
 
 supra).
 
 The principle is derived from earlier decisions in which the Court recognized that
 
 *213
 
 “Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory * * * they are ‘a separate people’ possessing ‘the power of regulating their internal and social relations’ ”
 
 (United States v Mazurie,
 
 419 US 544, 557). Thus, Federal preferences may be granted to Indians “not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities”
 
 (Morton v Mancari,
 
 417 US 535, 554). And, while “States do not enjoy th[e] same unique relationship,” they may adopt laws and policies to reflect or effectuate Federal laws designed “to readjust the allocation of jurisdiction over Indians” without opening themselves to the charge that they have engaged in race-based discrimination
 
 (Washington v Yakima Indian Nation, supra,
 
 at 501). The Tax Department’s specialized treatment of on-reservation cigarette and motor fuel sales is clearly such a policy, since it is predicated on the Department’s sensitivity to both tribal sovereignty issues and the complex restrictions imposed by the Indian Trader Laws.
 

 Inasmuch as we conclude that no invidious racial discrimination is involved, we must turn to the question whether the Tax Department’s policy of forbearance is sustainable here on a “rational basis” standard,
 
 (see, Washington v Yakima Indian Nation,
 
 439 US 463, 501-502,
 
 supra).
 
 The resolution of this question is complicated by recent postargument developments that significantly change the posture in which the present claims by petitioners are presented.
 

 When the case was initially argued before this Court, respondents took the position that the Tax Department’s policy of restraint was, in essence, a temporary measure adopted during a period of delicate negotiations in order to avoid actions that could be construed as “a direct affront” to the sovereign status of Indian nations and tribes. As the responsible State officials perceived the situation, these negotiations would be jeopardized if the State were to contemporaneously attempt to enforce its tax laws on the tribes’ reservations. Additionally, the Tax Department had elected to proceed slowly, even in the face of the
 
 Milhelm Attea
 
 decision, because of its concern about the remaining “potential legal obstacles to enforcement” that were suggested in the Supreme Court’s opinion. These considerations, respondents contended, provided a “rational basis” for a limited, relatively short-term decision by the Tax Department not to actively enforce the laws imposing motor fuel and cigarette taxes on Indian reservations.
 

 Several weeks after the appeal was argued, however, it was brought to our attention that, on April 28, 1998, the Tax
 
 *214
 
 Department repealed the regulations that were challenged in
 
 Milhelm Attea (see,
 
 20 NYS Register, Apr. 29, 1998, Issue 17, Book 1, at 22-24). Since these rules provided the only regulatory framework for enforcing the motor fuel and cigarette taxes on Indian reservations, their repeal signified that the Tax Department has committed itself to withholding active enforcement on a long-term basis. As the Department stated in its notice of adoption, “[t]he decision to repeal the regulations was based on both the inability of the regulations to achieve the purposes of the Tax Law and also the State’s respect for the Indian Nations’ sovereignty”
 
 (id.,
 
 at 23). Thus, although “the repeal * * * does not eliminate the statutory liability for taxes as they relate to sales on Indian reservations to nonexempt individuals”
 
 (id.),
 
 it does indicate that what was once portrayed as a temporary policy of abstention in enforcement has now become permanent.
 
 [3]
 

 Initially, we note our agreement with the parties that this new development, of which we must take judicial notice
 
 (see,
 
 CPLR 4511 [a]), does not render this proceeding moot. Petitioners’ pleading placed in issue “[Respondents’ system-wide failure to perform their
 
 statutory
 
 * * * dut[y] * * * to enforce Article [s] 20 * * * and * * * 12-A of the New York Tax Law” (emphasis supplied), as well as their failure to enforce the implementing regulations. The former aspect of the controversy survives the repeal of the regulations and, indeed, takes on additional urgency in light of the tax agency’s determination to abandon altogether its former enforcement mechanisms.
 

 Having concluded that the repealer did not moot the controversy, we nonetheless recognize that the recent administrative action so alters the landscape in which the controversy is presented that it would be unwise and unsound for us to resolve it on the basis of the arguments before us
 
 (cf., Matter of Michael B.,
 
 80 NY2d 299, 318). Our determinations that petitioners have standing to assert an equal protection claim but that their claim does not implicate racial discrimination leaves for resolution the question of whether the Tax Department’s nonenforcement policy is sustainable under a rational basis analysis. Since the Department’s former position — that
 
 *215
 
 its policy was a justifiable stopgap measure — is not viable in view of the unqualified repeal of the former enforcement regulations, the terms under which the case was argued in our Court and in the courts below are no longer meaningful or useful. Thus, we deem it appropriate to remit to Supreme Court so that the parties can consider the need, if any, for further submissions and the court can reconsider the dispute in light of the Tax Department’s newly minted
 
 long-term
 
 policy of abstaining from taking active measures to enforce the legislatively mandated excise and sales taxes on motor fuel and cigarettes destined for sale on Indian reservations.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Wesley taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . A similar set of regulations was challenged in
 
 Herzog Bros. Trucking v State Tax Commn.
 
 (69 NY2d 536,
 
 vacated and remanded
 
 487 US 1212,
 
 on remand
 
 72 NY2d 720).
 

 [2]
 

 . Although it agreed with Supreme Court on the merits, the Appellate Division concluded that that court had gone too far in conditionally directing a State-wide suspension of tax collection if the Tax Department did not correct its unequal implementation of the taxes at the end of the 120-day stay
 
 *212
 
 period. The Appellate Division stated that “it was error * * * to have awarded such sweeping, undemanded relief without adequate notice” (230 AD2d, at 344). Petitioners have cross-appealed, by permission of this Court, from the resulting modification. In view of our disposition of respondents’ appeal, the cross appeal is academic.
 

 [3]
 

 . The repeal message also makes reference to a proposed legislative package that would provide a tax credit to businesses located near reservations in order to offset the competitive advantage enjoyed by reservation retailers because of the Department’s nonenforcement policy (notice of adoption,
 
 op. cit,
 
 at 24). At this writing, the fate of that proposal is not known.