Peradotto, J. (dissenting).
I respectfully dissent, and would affirm. I agree with the majority that plaintiff’s two convenience stores are located on a “[qjualified reservation” as that term is defined in Tax Law § 470 (16) (a) and that declaratory relief is available to plaintiff on the facts of this case. I cannot agree with the majority’s conclusion, however, that Tax Law § 471-e is the exclusive statute governing the imposition of sales and excise taxes on cigarettes sold on Indian reservations. In my view, the majority’s conclusion is belied by the plain language of the statute and its legislative history. The statutory tax obligation on all cigarettes possessed for sale in New York State—including cigarettes sold by reservation retailers to non-Indians and Indians who are not members of that nation or tribe where the reservation is located (non-member Indians)—is imposed by Tax Law § 471. In my view, section 471-e does not circumscribe the long-standing tax obligation imposed by section 471. To the contrary, section 471-e establishes a statutory mechanism for the collection of that tax from reservation sales to non-Indians and non-member Indians which have historically evaded the cigarette tax.
Statutory Text
“It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature” (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]), and that “the most direct way to effectuate the will of the Legislature is to give meaning and force to the words of its statutes” (Desiderio v Ochs, 100 NY2d 159, 169 [2003]). To that end, “[w]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning” (Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]).
*113 Tax Law § 471 (1) clearly and unambiguously provides:
“There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax ... It shall be presumed that all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof’ (emphasis added).
Section 471 (2) requires that stamping agents “purchase stamps and affix such stamps in the manner prescribed to packages of cigarettes to be sold within the state.” There is no language in section 471 exempting reservation sales from the cigarette tax or otherwise limiting the applicability of the tax based upon where in the state such sales take place or to whom such sales are made. Rather, the plain language of section 471 imposes a tax on all cigarettes possessed for sale in the state except where the State lacks the power to impose such a tax (see § 471 [1]). It is by now well settled that a state is without power to tax reservation cigarette sales to tribal members for their own consumption (see Department of Taxation & Finance of N Y. v Milhelm Attea & Bros., 512 US 61, 64; Moe v Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 US 463, 475-481 [1976]). It is equally well settled, however, that the tax obligation imposed by section 471 validly applies to reservation sales to non-Indians and non-member Indians (see Milhelm Attea & Bros., 512 US at 64; Snyder v Wetzler, 84 NY2d 941, 942 [1994]). As the United States Supreme Court recognized in Mil-helm Attea & Bros., Tax Law § 471 (1)
“imposes a tax on all cigarettes possessed in the State except those that New York is ‘without power’ to tax . . .
“Because New York lacks authority to tax cigarettes sold to tribal members for their own consumption, . . . cigarettes to be consumed on the reservation by enrolled tribal members are tax exempt and need not be stamped. On-reservation cigarette sales to persons other than reservation Indians, however, are legitimately subject to state taxation” (512 US at 64 [emphasis added]).
Thus, the clear, mandatory language of section 471 requires *114 that stamping agents affix tax stamps to all cigarettes that the State has the power to tax, including cigarettes sold by reservation retailers to non-Indians and non-member Indians (see City of New York v Milhelm Attea & Bros., Inc., 550 F Supp 2d 332, 346 [2008], reconsideration denied 591 F Supp 2d 234 [2008]).
The enactment of the current version of Tax Law § 471-e in 2005 did not, as the majority concludes, alter the tax obligation imposed by section 471. Rather, section 471-e sets forth a comprehensive procedure to collect cigarette taxes in connection with reservation sales to the general public while permitting tribal members to purchase tax-free cigarettes for their own consumption (see Day Wholesale, Inc. v State of New York, 51 AD3d 383, 387 [2008]). Also, contrary to the conclusion of the majority, section 471-e does not “impose” a tax on reservation sales to non-Indian consumers. The tax obligation enforced by section 471-e predated the enactment of that statute (see § 471 [1]; see also Milhelm Attea & Bros., 512 US at 64). In concluding that section 471-e creates a tax obligation independent of section 471, the majority relies on subdivision (1) (a) of section 471-e, which provides:
“Notwithstanding any provision of this article to the contrary qualified Indians may purchase cigarettes for such qualified Indians’ own use or consumption exempt from cigarette tax on their nations’ or tribes’ qualified reservations. However, such qualified Indians purchasing cigarettes off their reservations or on another nation’s or tribe’s reservation, and non-Indians making cigarette purchases on an Indian reservation shall not be exempt from paying the cigarette tax when purchasing cigarettes within this state. Accordingly, all cigarettes sold on an Indian reservation to nonmembers of the nation or tribe or to non-Indians shall be taxed, and evidence of such tax will be by means of an affixed cigarette tax stamp.”
Subdivision (1) (a), the introduction to section 471-e, merely recites the undisputed proposition that cigarettes purchased by enrolled tribal members on tribal lands are tax exempt, while cigarette sales to all other persons are subject to the cigarette tax. The remainder of the statute establishes a system for the collection of the cigarette tax as applied to reservation sales to non-Indians and non-member Indians. Reading section 471 together with section 471-e thus compels the conclusion that *115 the former section imposes the tax on cigarettes, which includes cigarettes sold on reservations to non-Indians and non-member Indians, while the latter section establishes a mechanism for enforcing and collecting the tax on qualified reservations and preserves the tax exemption enjoyed by qualified Indians (see Day Wholesale, 51 AD3d at 384-385). As Supreme Court explained in this case, “[s]ection 471-e was merely designed to facilitate the state’s collection of cigarette taxes arising from Indian sales to non-Indian consumers” (Cayuga Indian Nation of NY. v Gould, 21 Misc 3d 1142[A], 2008 NY Slip Op 52478[U], *5).
The statutory text therefore does not support the majority’s conclusion that Tax Law § 471-e limits the scope of section 471. In my view, if the Legislature intended to supersede or restrict the long-standing tax obligation imposed by section 471 with respect to reservation cigarette sales to non-Indians and nonmember Indians, it would have so stated. Under the plain language of section 471, cigarettes sold by Indian retailers to the public are subject to the State’s cigarette tax. In the absence of limiting language in section 471 or an explicit legislative directive in section 471-e, the enactment of the latter statute does not extinguish the tax liability imposed by the former statute.
Legislative History
The legislative history of Tax Law § 471-e also supports my view that the Legislature’s intent in enacting that provision was to provide a statutory collection mechanism for the tax imposed by section 471. For more than two decades, the State has attempted—without success—to devise an effective means of enforcing and collecting the cigarette tax established by section 471 from reservation sales to non-Indians and non-member Indians. As this Court explained in Day Wholesale, section 471-e simply “embodies the Legislature’s most recent effort to collect taxes on cigarettes sold on Indian reservations” (51 AD3d at 384).
In 1988, the Department of Taxation and Finance (Department) promulgated a series of regulations to facilitate the collection of sales and excise taxes on reservation sales, including cigarette sales, to non-Indians (see 20 NYCRR former 335.4, 335.5; Matter of New York Assn. of Convenience Stores v Urbach, 92 NY2d 204, 209 [1998]). The regulations, which were based on a system of “probable demand,” provided that stamp *116 ing agents would supply registered dealers with unstamped or specially stamped cigarettes for tax-exempt sales and with stamped cigarettes for taxable sales to non-Indians (NY Reg, Sept. 14, 1988, at 45). As the majority points out, the regulations were repealed 10 years later, based in part on enforcement difficulties faced by the Department (see NY Reg, Apr. 29, 1998, at 22-24). Nonetheless, the Department specifically recognized that “[t]he repeal of the regulations does not eliminate the statutory liability for the taxes as they relate to sales on Indian reservations to non-exempt individuals” (id. at 23 [emphasis added]).
After the repeal of the regulations, the Department publicly articulated a “forbearance” policy, pursuant to which it suspended its enforcement efforts to collect the tax imposed by Tax Law § 471 on reservation sales of cigarettes (see Milhelm Attea & Bros., 550 F Supp 2d at 346; see also New York Assn. of Convenience Stores, 92 NY2d at 213-215). As a result of the forbearance or, in the words of Supreme Court in this case, the “paralysis” of the Department in enforcing the cigarette tax as applied to reservation sales to non-Indians (Cayuga Indian Nation of N.Y., 2008 NY Slip Op 52478[U] at *7), the Legislature interceded and, in 2003, enacted the first version of section 471-e (see L 2003, ch 62, part T3, § 4, as amended by L 2003, ch 63, part Z, § 4). The statute provided that,
“[w]here a non-native American person purchases, for such person’s own consumption, any cigarettes ... on or originating from native American nation or tribe land . . . , the commissioner shall promulgate rules and regulations necessary to implement the collection of sales, excise and use taxes on such cigarettes or other tobacco products.”
It is clear from the face of the statute that the purpose of section 471-e was not to impose a tax on cigarettes sold to non-Indians and non-member Indians on reservations, but to require the Department to establish the rules and regulations required to collect the tax imposed by section 471. The Governor’s veto message explained that the statute “would mandate that the Department . . . begin collecting taxes on retail purchases by non-Native Americans on Native American reservation land” (Governor’s Veto Message No. 2, Veto Jacket, 2003 NY Assembly Bill A2106-B [emphasis added]). The Commissioner of the Department criticized the bill, noting that “the Tribes are not inclined to assist the State in the collection of state taxes,” and *117 he stated that the bill “proposes no new approach or solutions to this tax collection dilemma” (Commissioner’s Letter, Veto Jacket, 2003 NY Assembly Bill A2106-B [Bill Jacket, L 2003, ch 62, at 37] [emphasis added]).
Pursuant to Tax Law former § 471-e, the Department developed regulations to collect taxes on reservation cigarette sales to non-Indians (see NY Reg, Sept. 24, 2003, at 18-21). The stated purpose of the regulations was “[t]o implement the collection of excise taxes and sales and compensating use taxes on retail sales made to non-Indians on New York State Indian reservations” (id. at 18; see also id. at 20 [“Chapters (62) (Part T3) and 63 (Part [Z]) of the Laws of 2003 mandate that the Commissioner adopt rules and regulations to effectuate the collection of taxes on retail sales made to non-Indians on Indian reservations in this State”]). Significantly, the Department noted that “[t]his tax liability of non-Indian consumers is a feature of current law and has been for some time” (id. at 20). Thus, the Department recognized that section 471-e did not impose a new tax. Instead, the statute directed the Department to establish a “mechanism! ]” for the collection of taxes long imposed by New York law (id.).
The proposed regulations, however, were never adopted. Thus, in June 2004, the Legislature passed a bill mirroring the language of the proposed regulations and including the current language of Tax Law § 471-e (see 2004 NY Senate Bill S6822-B). As the Senate sponsor stated, “[t]his bill codifies existing Department . . . regulations to implement its provisions to collect taxes from non-Native Americans who purchase cigarettes ... on Native American reservations. [The bill] allows . . . New York State to collect [those] taxes at the distributor level before they are transported onto the reservation” (Sponsor’s Mem, Veto Jacket, 2004 NY Senate Bill S6822-B). Although that bill was vetoed by the Governor, it was reintroduced with minor amendments the following year, and it was signed into law on April 12, 2005 (see L 2005, ch 61, part K, § 2).
As the legislative history of the statute makes plain, Tax Law § 471-e did not create a new tax or limit the scope of the tax liability imposed by section 471. Rather, when the Department refused to implement a regulatory framework for the collection of the tax imposed by section 471, the Legislature enacted a comprehensive statutory collection scheme by means of the amended section 471-e. Far from impairing the tax obligation established in section 471, the clear intent of section 471-e was *118 to collect the taxes lawfully imposed pursuant to section 471 by requiring all cigarettes intended for sale—whether on or off a reservation and whether to Indians or non-Indians—to be tax stamped. Thus, the legislative history does not support the majority’s conclusion that “[t]he Legislature . . . recognized the need to have a separate statutory scheme in place, aside from the general taxing provision of Tax Law § 471, in order to impose a cigarette tax on reservation sales . . . .” Rather, in enacting section 471-e, the Legislature recognized that the executive branch was not going to enforce the cigarette tax imposed by section 471 in the absence of explicit legislative directives. As a result, the Legislature crafted a statutory collection scheme to address the particular obstacles posed by reservation cigarette sales. The tax liability established by section 471 was unaffected.
The Impact of Day Wholesale
In my view, this Court’s decision in Day Wholesale does not compel a different result. In that case, we merely determined that the specific collection method outlined in Tax Law § 471-e is not in effect because the State failed to implement the tax exemption coupon system, which we determined was necessary “to the functioning of the procedure set forth in the amended version of Tax Law § 471-e” (51 AD3d at 387). Our decision in that case did not disturb the underlying obligation to pay the taxes imposed by section 471. To the contrary, we recognized that the tax obligation on cigarettes stems from section 471, not section 471-e, and stated:
“Pursuant to Tax Law § 471 (2), the ultimate liability for the cigarette tax falls on the consumer, but the cigarette tax is advanced and paid by agents . . . through the use of tax stamps . . . The tax applies to ‘all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax’ . . . Those circumstances pertain only to some of the cigarettes sold on Indian reservations” (id. at 384).
The fact that, as a result of Day Wholesale, the particular collection scheme established in section 471-e is no longer “in effect” (id.) does not relieve reservation retailers of their legal obligation to sell only tax-stamped cigarettes to non-Indian and nonmember Indian purchasers. The tax liability imposed by section *119 471 remains regardless of whether the State has a statutory mechanism in place for the effective collection of the required taxes from Native American retailers.
In a recent federal case, the District Court of the Eastern District of New York rejected the defendants’ claims that our decision in Day Wholesale altered the scope of Tax Law § 471 (see Milhelm Attea & Bros., 591 F Supp 2d at 237). In that case, the City of New York commenced an action against cigarette wholesalers for violation of the federal Contraband Cigarettes Trafficking Act (18 USC § 2341 et seq.), alleging that the defendants shipped unstamped cigarettes to Indian retailers who resold the cigarettes to the general public in violation of section 471 (see Milhelm Attea & Bros., 591 F Supp 2d at 235). After this Court’s decision in Day Wholesale, the defendants moved for reconsideration of the District Court’s order denying their motions to dismiss, arguing “that stamping agents are not required to affix tax stamps on cigarettes sold to reservation retailers until the Department issues and distributes tax exemption coupons pursuant to [section] 471-e” and that, therefore, the defendants’ sale of unstamped cigarettes did not violate New York law (id. at 236). In denying defendants’ motion for reconsideration, the District Court stated:
“This Court does not disagree with the contention that [section] 471-e was intended by the New York legislature to provide a mechanism to collect taxes on re-sales of cigarettes by Native American retailers to non-tribe members. The current enforceability of that statute, however, does not alter the scope of [section] 471 or its legal force. Those sales . do not become non-taxable events with the Appellate Division’s decision in Day Wholesale-, rather, the court in that case found that statutorily prescribed pre-conditions for one proposed mechanism of collection have not been met” (id. at 237-238).
The Department’s Forbearance Policy
The majority states that
“[hjistorically, the State of New York has not attempted to impose taxes on reservation cigarette sales unless a specific regulatory or statutory scheme was in place to differentiate between sales to Indians and sales to non-Indians or non-member Indians. Without such a scheme in place, it logically *120 follows that no taxes may be collected or owed to the State by plaintiff.”
I cannot agree with the majority’s reasoning. As discussed above, the State has imposed taxes on cigarette sales to non-Indians—whether on or off a qualified reservation—for decades. While it is true that the Department has adopted a longstanding policy of “forbearance”* pursuant to which it has not sought to collect those taxes on reservation sales, an administrative agency’s non-enforcement policy does not and cannot nullify a tax obligation created by statute (see Milhelm Attea & Bros., 550 F Supp 2d at 347 [“The (District) Court recognizes that the Department has publicly articulated a forbearance policy on the collection of taxes from the sale of cigarettes by stamping agents to reservation retailers . . . However, an enforcement decision by the Department does not serve to obviate state legislation”]). “Simply stated, states ‘require’ certain conduct via duly enacted laws; the failure of the executive branch to enforce the law is not the same as saying that the legislative branch has repealed it” (United States v Morrison, 521 F Supp 2d 246, 254 [2007]). While the majority may be correct in concluding that, in the absence of the collection scheme established by section 471-e, it may be difficult or impossible for the State to collect cigarette taxes from reservation retailers, it does not “logically follow[ ]” that no taxes are owed by plaintiff.
Conclusion
The tax liability imposed by Tax Law § 471 is independent of any particular regulatory or statutory framework established to collect the tax. Accordingly, I would affirm the judgment denying plaintiff’s motion for summary judgment and granting defendants’ cross motion for summary judgment and declaring that section 471-e does not exclusively govern the imposition of sales and excise taxes on cigarettes sold in plaintiffs two stores and that our decision in Day Wholesale does not foreclose prosecutions under the Tax Law. Regardless of whether the State can effectively collect cigarette taxes on reservation sales to non-Indians and non-member Indians, section 471 (1) mandates that all such sales are “subject to tax” and, thus, reservation retailers who flout that obligation risk prosecution under Tax Law former § 1814.
*121 Centra, Green and Gorski, JJ., concur with Hurlbutt, J.P.; Peradotto, J., dissents and votes to affirm in a separate opinion.
It is hereby ordered that the judgment so appealed from is reversed, on the law, without costs, the motion is granted in part and judgment is granted in favor of plaintiff as follows:
It is adjudged and declared that Tax Law § 471-e exclusively governs the imposition of sales and excise taxes on cigarettes sold on a qualified reservation as that term is defined in Tax Law § 470 (16) (a), and
It is further adjudged and declared that plaintiffs two stores in question are located within a qualified reservation as that term is defined in Tax Law § 470 (16) (a), and the cross motion is denied and the declarations are vacated.

 In my view, the fact that the Department has a “forbearance policy” with respect to the collection of cigarette taxes from Indian sellers suggests that the tax obligation is independent of any regulatory or statutory framework for the collection of such taxes.