Buddie GREENE, Appellant,

v.

COMMISSIONER OF the MINNESO-
TA DEPARTMENT OF HUMAN
SERVICES, Respondent,

Aitkin County Health and Human
Services, Respondent.

No. A06–804.

Supreme Court of Minnesota.

Aug. 28, 2008.

Rehearing Denied Sept. 29, 2008.

Frank Bibeau, Megan Treuer, Anishinabe Legal Services, Cass Lake, MN, for appellant.

Lori Swanson, Attorney General, Margaret H. Chutich, Assistant Attorney General, St. Paul, MN; and James Ratz, Aitkin County Attorney, Sarah Elizabeth Winge, Assistant Aitkin County Attorney, Aitkin, MN, for respondents.

Mark A. Anderson, Sara K. VanNorman, Jacobson, Buffalo, Magnuson, Anderson & Hogen, PC, St. Paul, MN, for amicus curiae Minnesota Chippewa Tribe.

Kim Mammedaty, Cass Lake, MN, for amicus curiae Leech Lake Band of Ojibwe.

## OPINION

DIETZEN, Justice.

Buddie Greene, an enrolled member of the Minnesota Chippewa Tribe (Tribe) living off the reservation in Aitkin County, challenges the reduction of her benefits under the Minnesota Family Investment Program (MFIP). After Greene was referred to the Minnesota Chippewa Tribe for employment services, she requested that she receive employment services through the County, and failed to participate in the tribal program. As a result, Greene's cash benefits were reduced. Following an administrative hearing, the Commissioner of the Minnesota Department of Human Services (Commissioner) upheld the reduction of Greene's cash benefits. The district court affirmed the Commissioner's decision. On appeal, Greene argued that (1) the Commissioner improperly interpreted Minn.Stat.

§ 256J.645 (2006) to require her to receive employment services through the Minnesota Chippewa Tribe; and (2) section 256J.645 violates her rights to equal protection under the United States and Minnesota Constitutions. The court of appeals affirmed in a 2–1 decision. *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 733 N.W.2d 490 (Minn.App.2007). We granted review and affirm.

### A. Regulatory Framework

This appeal concerns the administration of the Minnesota Family Investment Program by respondents Commissioner of the Minnesota Department of Human Services and Aitkin County Health and Human Services (County). MFIP is an economic support program for low-income families with children. *See* Minn.Stat. §§ 256J.001–.95 (2006). The program provides many forms of support to families in need, including financial assistance, food support, child care assistance, and employment services.

### 1. Personal Responsibility & Work Opportunity Act

MFIP is Minnesota's response to the Personal Responsibility & Work Opportunity Reconciliation Act of 1996 (PRWORA), which created Temporary Assistance for Needy Families (TANF), a federal block grant program replacing the Aid to Families with Dependent Children (AFDC) program. Pub.L. No. 104–193, 110 Stat. 2105 (1996) (codified as amended in scattered sections of 42 U.S.C.). PRWORA made sweeping changes to federal welfare policy "by promoting job preparation, work, and marriage," 42 U.S.C. § 601(a) (2000), and by imposing a 60–month lifetime limit on assistance, 42 U.S.C. § 608(a)(7) (2000). PRWORA was intended "to increase the flexibility of States" in operating welfare programs by shifting responsibility for the administration of the programs to the states. 42 U.S.C. § 601(a).

State TANF programs are funded with both state and federal money. The TANF block grant from the federal government has an annual cost-sharing requirement for states. 42 U.S.C. § 603 (2000). States must spend the money to help eligible families in ways consistent with the TANF program. *See id.*; 42 U.S.C. §§ 604, 607–08 (2000).[1]

Under PRWORA, federally recognized Indian tribes are eligible to create and administer their own TANF programs. 42 U.S.C. § 612 (2000). If a tribal plan is approved by the United States Department of Health and Human Services, the tribe receives federal funds out of the state's federal TANF block grant allocation. 42 U.S.C. § 612(a)(1)(A). Like states, tribes may use their TANF funding in any manner reasonably calculated to accomplish the purposes of TANF, but tribal TANF programs have more flexibility. *See* 42 U.S.C. § 612(a)(3)(C)(ii). Tribes generally are allowed to determine their own TANF eligibility criteria, work participation requirements, benefit standards, service populations, and sanctions for noncompliance. U.S. Gen. Accounting Office, *Welfare Reform: Tribal TANF Allows Flexibility to Tailor Programs, but Conditions on Reservation Make It Difficult to Move Recipients into Jobs* 5, 24–31 (2002).

PRWORA broke new ground by providing federally recognized Indian tribes with

---

**1.** According to information from the Department of Human Services, state spending for MFIP cash and state food assistance in 2006 was $55 million; federal spending was $224 million. Minn. Dep't of Human Servs., *Welfare in Minnesota: Facts and Figures* (Feb. 2007), *available at* http://edocs.dhs.state.mn.us/lfserver/Legacy/DHS–4737–ENG.

the opportunity to create and administer their own welfare programs. Under AFDC, tribal members had to enroll in state welfare programs. U.S. Gen. Accounting Office, *supra*, at 4. Some tribal organizations heralded PRWORA as "the United States Government's strongest recognition yet of Indian sovereignty." Pam Belluck, *Tribes' New Power Over Welfare May Come at Too High a Price*, N.Y. Times, Sept. 9, 1997, at A1. PRWORA does not require states to contribute money or other support to tribal programs in their states. As a result, many tribes, including the Minnesota Chippewa Tribe, have not set up their own TANF programs. *Id.*[2] PRWORA ensures, nonetheless, that states provide assistance to tribal members who are not eligible to participate in a tribal TANF program. *See* 42 U.S.C. § 602(a)(5) (2000) (requiring states to provide each member of an Indian tribe, who is not eligible for assistance under a tribal TANF program, "with equitable access to assistance under the State program").

### 2. Minnesota Family Investment Program

In 1997, Minnesota enacted legislation to implement the requirements of TANF. Act of Apr. 30, 1997, ch. 85, art. 1, 1997 Minn. Laws 499, 499–587 (codified at Minn. Stat. ch. 256J (1998)). One provision requires county governments to "cooperate with tribal governments in the implementation of MFIP." Minn.Stat. § 256J.315. This cooperation includes "the sharing of MFIP duties," such as "initial screening, orientation, assessments, and provision of employment and training services." *Id.*

The statute further provides that county agencies "shall encourage tribal governments to assume duties related to MFIP and shall work cooperatively with tribes that have assumed responsibility for a portion of the MFIP program to expand tribal responsibilities, if that expansion is requested by the tribe." *Id.*

To facilitate tribal involvement in MFIP, the Commissioner is expressly authorized to enter into agreements with federally recognized Indian tribes or a consortium of tribes to provide employment services to their members. Minn.Stat. § 256J.645, subd. 1.[3] Under these agreements, the tribes assume the responsibility for providing employment services to their eligible members. *See id.*, subd. 2. To effectuate these agreements, MFIP provides that "Indian tribal members receiving MFIP benefits and residing in the service area of an Indian tribe operating employment services under an agreement with the commissioner *must be referred* by county agencies in the service area to the Indian tribe for employment services." *Id.*, subd. 4 (emphasis added). The interpretation and effect of this referral language is at the center of the dispute in this case.

Agreements to provide employment services to tribal members benefit the Indian tribes, as well as their members. The tribes benefit by receiving funds to develop and provide MFIP services to their members when there are insufficient resources to develop and administer tribal TANF programs. Indian tribes that enter into agreements with the state receive funding at the same levels and under the

---

**2.** The Mille Lacs Band of Ojibwe is the only Indian tribe in Minnesota with its own TANF program.

**3.** The ability to contract with Indian tribes to provide employment services continued a prior practice under the AFDC program that

allowed Indian tribes to provide employment services to their members. *See* Act of June 1, 1989, ch. 282, art. 5, § 34, 1989 Minn. Laws 1114, 1487–88 (codified at Minn.Stat. § 256.736 (1990)) (repealed 1997).

same conditions as counties that provide these services. *See* Minn.Stat. § 256J.645, subd. 3; Minn.Stat. § 256J.626. Tribal members also benefit by receiving culturally appropriate services. It is clear that tribal implementation of the employment services programs and other aspects of MFIP are intended to provide flexibility so that tribes can address the specific cultural needs of their members; the stated purpose of encouraging tribal involvement in the implementation of MFIP is "to ensure that the program meets the special needs of persons living on Indian reservations." Minn.Stat. § 256J.315. MFIP generally gives the tribes discretion to "use the funds for any allowable expenditures." Minn.Stat. § 256J.626, subd. 1. Therefore, tribes have access to state and federal funds to provide services that are tailored to the unique conditions in their tribal communities.

Pursuant to section 256J.645, the State of Minnesota and the Tribe entered into a Reservation Grant Contract. Under the contract, the Tribe agreed to provide an employment services program for members in the Tribe's service area. The contract provides that the Tribe "shall provide Tribal program services to persons who are eligible for such services."

### B. The Application for MFIP Benefits

In July 2004, appellant Buddie Greene applied through Aitkin County to receive MFIP benefits for herself and her child. *See* Minn.Stat. § 256J.09, subd. 1 (providing that a person applying for TANF assistance must submit an application to the county agency in the county where that person lives). There is no dispute that Greene was eligible to receive MFIP bene-

fits. As part of the application process, Greene signed a tribal membership form indicating that she is enrolled or eligible for enrollment in the Tribe through the Leech Lake Band of Ojibwe.

Because Greene is a tribal member and resides in the tribal service area, the County referred her to the Tribe for employment services. Subsequently, Greene asked the Tribe to refer her to the County for employment services. The Tribe declined on the ground that it was "mandated to provide" her with services and could not refer her elsewhere.

Greene refused to participate in the tribal employment services program. Under MFIP, participation in an employment services program is required. *See* Minn.Stat. §§ 256J.49–.62. "A participant who fails without good cause" to comply with a MFIP program requirement "shall be subject to a sanction." Minn.Stat. § 256J.46, subd. 1. Consequently, Greene was notified that her benefits would be reduced for failing to cooperate with employment services requirements unless she established "good cause" for failing to participate in the employment services program. According to the notice, "good cause" reasons include the inability to get appropriate child care and the lack of transportation. The notice advised Greene to call her case worker if she had "a good cause reason" for not attending the employment services overview meeting. Greene made no effort to show good cause.

### C. The Hearing

In January 2005, Greene appealed the reduction in benefits, and the matter proceeded to hearing.[4] Greene challenged the reduction in benefits of about $200 per

---

4. Greene's appeal did not meet the 10–day appeal deadline that would enable her to continue receiving full benefits while the appeal was pending. Therefore, Greene's MFIP

grant amount was reduced by 30 percent from $675 to $473 a month. *See* Minn.Stat. § 256J.46, subd. 1 (addressing sanctions).

month, arguing that Minn.Stat. § 256J.645, subd. 4, should not be interpreted to require her to receive employment services through the Tribe, and requiring her to receive employment services through the Tribe violates her constitutional rights to equal protection. Greene maintained that, as a resident of Aitkin County, she is entitled to receive employment services through the County. While she acknowledged that she was not in compliance with the requirements of the tribal employment services program, she testified that she was looking for work. Greene stated that she did not "want" to participate in the Tribal program. The record does not reveal the reasons Greene failed to participate in the tribal program.

### D. The Decision

The hearing referee concluded that Greene was entitled to receive employment services through the County. The hearing officer stated:

> While the statute imposes a duty upon the county to make referrals to tribal employment services when a participant is deemed eligible, there is no requirement that an eligible participant utilize that service simply because they are eligible. Likewise, the fact that the tribal employment services program cannot refuse to provide eligible participants services, does not in turn create a requirement that an eligible participant utilize those services. [Greene], like any citizen of Aitkin County, should be able to access county employment services. Because the county has not provided those services to her, there has been [no] failure to comply and any sanction on that basis should be reversed.

The Commissioner reversed the recommendation of the referee, explaining that the statute and contract are clear: "A person in [Greene's] circumstances must get employment services through the [Tribe] even though [the County] pays her cash benefits." The Commissioner concluded that Greene refused without good cause to participate in employment services through the Tribe, and the County properly imposed a reduction in cash benefits as a sanction.

The district court upheld the reduction in Greene's benefits, and the court of appeals affirmed in a 2–1 decision. *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 733 N.W.2d 490 (Minn.App.2007). The majority determined that both Minn.Stat. § 256J.645, subd. 4, and the contract require a MFIP-eligible tribal member to use employment services provided by the Tribe. 733 N.W.2d at 494–95. The court then concluded that rational basis review applies to Greene's equal protection challenge because the classification of tribal members is a political rather than a racial classification. *Id.* at 495–96. The court determined that the statute satisfies rational basis review, because the classification is reasonably related to the statutory purpose of promoting tribal self-government. *Id.* at 496–97. The dissent concluded that "the law requires a referral but does not strip applicants like [Greene] of their rights as a county resident if they wish to forgo their tribal preferences and deal directly with the county." *Id.* at 498 (Randall, J., dissenting).

### I.

We first consider Greene's contention that the Commissioner erred in concluding that Minn.Stat. § 256J.645, subd. 4, requires eligible tribal members to receive employment services through the Tribe. Greene does not dispute that to maintain her eligibility for MFIP benefits that she is required to participate in an employment services program. *See* Minn.Stat. § 256J.46, subd. 1. But Greene contends

that under the statute, tribal members living off the reservation have the right to receive employment services through the County, rather than the Tribe.

██ "We retain the authority to review de novo errors of law which arise when an agency decision is based upon the meaning of words in a statute." *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits,* 664 N.W.2d 1, 7 (Minn.2003). The primary objective of statutory interpretation is to ascertain and give effect to the intention of the legislature. Minn.Stat. § 645.16 (2006). In ascertaining the intention of the legislature, "we give effect to the plain meaning of statutory terms." *Ill. Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792, 803 (Minn.2004); *see* Minn.Stat. § 645.08 (2006).

The statute provides:

Indian tribal members receiving MFIP benefits and residing in the service area of an Indian tribe operating employment services under an agreement with the commissioner must be referred by county agencies in the service area to the Indian tribe for employment services.

Minn.Stat. § 256J.645, subd. 4.[5] It is undisputed that Greene was receiving MFIP benefits and residing within the service area of an Indian tribe operating under an agreement with the Commissioner. Thus, the statute requires that Greene "must be referred" by the county to the Indian tribe for employment services. *Id.* The statute contemplates a one-way referral from the County to the Tribe. The statute makes the county's obligation clear by providing that tribal members *"must be referred"* to

the tribe for employment services. *Id.* (emphasis added). " 'Must' is mandatory." Minn.Stat. § 645.44, subd. 15a (2006).

██ When a tribal member has been referred to the tribe for employment services, the Indian tribe has a parallel obligation to provide those services. Specifically, a tribe that enters into an agreement with the state to provide employment services to members of the tribe "must ... agree to fulfill the responsibilities provided under the employment services component of MFIP regarding operation of MFIP employment services." Minn.Stat. § 256J.645, subd. 2(1). Consequently, once a tribe assumes responsibility for providing employment services to eligible tribal members, the duty to provide employment services shifts from the county to the tribe. The agreement here provides that the Tribe "shall provide" MFIP employment services to tribal members who are eligible for such services. Thus, Minn. Stat. § 256J.645, subd. 4, contemplates that upon referral under the statute that the tribal member receive employment services through the Indian tribe.

Both the dissent and Greene argue that under the statute a tribal member retains the right to receive employment services through the County rather than the Tribe and, therefore, is not prohibited from electing to receive employment services through the County. According to the dissent, "the plain language of MFIP entitles Greene to receive employment services through Aitkin County." The argument rests on the premise that the statute grants to a tribal member the right to "opt-out" or select whether to receive em-

<hr>

5. The dissent argues that the proper starting point for determining whether Greene is entitled to receive employment services through the County is Minn.Stat. § 256J.10 (2006), which relates to the general eligibility requirements for MFIP benefits. Because there is no dispute that Greene was eligible for and was properly receiving MFIP benefits, this statute has no bearing on the dispute here, which concerns where Indian tribal members can access MFIP employment services.

ployment services from the Indian tribe or the County. But section 256J.645, subd. 4, does not contain any language that expressly grants to tribal members either the right to decline receiving employment services through the Tribe or the right to receive those services through the County. The dissent does not reference any language in section 256J.645, subd. 4, to support its statutory interpretation. The plain language of the statute does not expressly grant or retain a right to select whether the tribal member receives employment services through either the tribe or the county. Had the legislature intended to provide a tribal member with the right to select where the individual would receive employment services, it would have expressly provided that right. *Id.*

Further, based on our review of the statute and chapter 256J, we conclude that the legislature was very careful in setting forth the eligibility requirements for individuals to receive MFIP benefits, and an individual's rights under the statute. We have reviewed chapter 256J in its entirety and find no language indicating that Greene has the statutory right to select where she receives employment services. Absent express statutory language providing that tribal members have the right to receive employment services from a source other than the tribe, it is not our proper function to add such a right into the statute. *See, e.g., Reiter v. Kiffmeyer,* 721 N.W.2d 908, 911 (Minn.2006) (stating that "we not read into a statute a provision that the legislature has omitted, either purposely or inadvertently").

■ Greene essentially admits that the statute does not expressly grant her the right to select where she receives employment services, but argues that the silence in the statute preserves her right to opt out. According to Greene, the right to opt out is implied by silence in the statute

regarding any requirement that tribal members actually use tribal employment services once they are referred to the tribe. We reject Greene's argument. Even if there were some silence in the statute that creates an ambiguity, we would defer to the Commissioner's interpretation of the statute. MFIP is a complex regulatory scheme that requires the technical expertise of the Commissioner to interpret and administer. *See In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance,* 731 N.W.2d 502, 523–24 (Minn.2007); *cf. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 1002–03, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (supporting deference to administrative agencies, particularly where the subject matter is technical, complex, and dynamic).

According to the Commissioner, the mandatory referral provision allows tribes to provide culturally appropriate services to tribal members and promotes tribal sovereignty. Thus, it ensures the success of tribal employment services programs. The Commissioner's interpretation is a longstanding interpretation of the statutory language that dates back to at least 1994. *See Annandale,* 731 N.W.2d at 514 (noting that we defer to an agency's interpretation when the language is ambiguous and "when the agency's interpretation is one of long standing"). In interpreting almost identical language in the former AFDC statute, the Commissioner determined that eligible tribal members were required to use tribal employment services. *See* Minn.Stat. § 256.736, subd. 18(*l*) (1990) (repealed 1997) (providing that "Indian tribe members receiving AFDC and residing in the service area of an Indian tribe operating employment and training services under an agreement with the commissioner must be referred by county agencies in the service area to the

Indian tribe for employment and training services").[6]

Also, granting a tribal member the right to opt out of the mandatory referral runs contrary to the presumption that the legislature "intends to favor the public interest as against any private interest." Minn. Stat. § 645.17(5) (2006). Clearly, the public interest of promoting tribal sovereignty and providing culturally appropriate services through the tribe must be favored over any private interest of Greene.

Amici Minnesota Chippewa Tribe and Leech Lake Band of Ojibwe support the Commissioner's interpretation of the statute that Greene does not have the right to select where she receives employment services. They state they "have always treated the tribal provision of services under the MFIP agreements as mandatory, both for the [Tribe] and for tribal members."

The dissent suggests that Minn.Stat. § 256J.315 requires counties and tribes to *share* the provision of employment services. Counties are required to develop and provide employment and training services under Minn.Stat. § 256J.50, subd. 1, but once the tribe enters into an agreement with the state to provide employment services to eligible tribal members, the tribe has the responsibility for providing those services. *See* Minn.Stat. § 256J.645, subd. 2. Although section 256J.315 does discuss the "sharing of MFIP duties," the statute also requires counties to "encourage tribal governments to *assume duties* related to MFIP." (Emphasis added.) When it entered the reservation grant contract, the Tribe assumed the duty to provide MFIP employment services; thus, it entered the reservation grant contract and there is no further role for the County in connection with the employment services component of MFIP beyond the statutory requirement to refer eligible Indian tribal members to the Tribe. *See* Minn.Stat. § 256J.645, subd. 4; *see also id.*, subd. 2 (requiring the tribe to "coordinate operation of its program with the county agency" and other services and programs in the county).[7]

For these reasons, we conclude that Minn.Stat. § 256J.645, subd. 4, requires that eligible tribal members be referred to the Tribe to receive employment services and contemplates that tribal members receive employment services through the

---

**6.** The Commissioner interpreted this statute as requiring counties to refer eligible tribal members to the tribe for employment services under the AFDC program. *See* Minn. Dep't of Econ. Sec., Minn. Dep't of Human Servs., Instructional Bulletin # 94–9B, *Referral of American Indians Receiving Aid to Families with Dependent Children (AFDC) or Minnesota Family Investment Program (MFIP) Case Management to Tribal or Reservation Job Opportunities and Basic Skills (JOBS)/Project STRIDE Programs in Northern Minnesota* 5, § IV.B (Dec. 30, 1994).

**7.** The dissent also suggests that Greene has the right to receive employment services through the County, because counties generally are required to make available to participants the choice of at least two employment and training service providers. *See* Minn. Stat. § 256J.50, subd. 8. We disagree. This statute has no relevance to the issues presented here. The dissent acknowledges that under these circumstances, Minn.Stat. § 256J.645, subd. 4, "requires county agencies to refer tribal members to their tribes for employment services." In the face of this referral language, the county has no obligation to provide tribal members with a choice of different employment service providers. In fact, such an obligation would conflict with the county's statutory obligation to refer tribal members to the tribe for employment services. Moreover, Greene has not argued that the Tribe has an obligation to provide her with a choice of employment service providers, and she has not argued that the Tribe failed to provide her with a choice of employment service providers. She simply argues that she should not have to use the Tribe's employment service providers.

Tribe.[8] Accordingly, MFIP does not grant to tribal members any right to select whether they receive employment services through the tribe or the county.

■ But that does not end our statutory analysis. Although we conclude that under Minn.Stat. § 256J.645, subd. 4, the legislature has not given tribal members the right to select where they receive employment services, tribal members do have the right under Minn.Stat. § 256J.57, subd. 1(a), to show good cause for failing to participate in employment services as required by the MFIP program. *See also* Minn.Stat. § 256J.46, subd. 1 (providing that a participant who fails to comply with MFIP requirements "shall be subject to a sanction," unless the participant can show "good cause"). A county agency may not impose a sanction "if it determines that the participant has good cause for failing" to participate in employment services through the tribe. Minn.Stat. § 256J.57, subd. 1. The statute provides 13 types of "good cause," including the individual's inability to secure necessary transportation, the individual's participation in acceptable work activities, and other documented, verifiable impediments to compliance beyond the individual's control. *Id.* Thus, a tribal member has the right to show good cause to avoid a sanction under the program.

Greene suggests for the first time on appeal that she had transportation issues related to the distance from her home to the nearest tribal employment services location that constitute good cause under the statute. The Commissioner disputes her contention. But neither party presented evidence on the good cause issue and, therefore, it was not considered below. The record before us indicates that Greene did not want to participate in employment services through the Tribe, but gave no reason for declining to do so. On this record, Greene has not made a showing of "good cause" under section 256J.57. Therefore, the County properly sanctioned Greene for failing to comply with the employment services requirements under MFIP.

## II.

We next consider Greene's claim that Minn.Stat. § 256J.645, subd. 4, deprives her of equal protection under the United States and Minnesota Constitutions. The parties sharply disagree as to the proper standard of review.

■ The constitutionality of a statute is a question of law we review de novo. *Irongate Enters., Inc. v. County of St. Louis,* 736 N.W.2d 326, 332 (Minn.2007). "We presume statutes to be constitutional and exercise the power to declare a statute unconstitutional with extreme caution and only when absolutely necessary." *ILHC of Eagan, LLC v. County of Dakota,* 693

---

8. We acknowledge that states receiving TANF grants, such as Minnesota, must certify, among other things:

> [T]he State will provide each member of an Indian tribe, who is domiciled in the State and is not eligible for assistance under a tribal family assistance plan under section 612 of this title with equitable access to assistance under the State program funded under this part attributable to funds provided by the Federal Government.

42 U.S.C. § 602(a)(5). The term "assistance," however, is defined narrowly in the

federal regulations as "cash, payments, vouchers, and other forms of benefits designed to meet a family's ongoing basic needs." 45 C.F.R. § 260.31(a)(1) (2007). The regulations specifically exclude services such as "employment-related services that do not provide basic economic support" from the definition of "assistance." *Id.* at § 260.31(b)(6). Therefore, this statute has no bearing on the provision of employment services.

N.W.2d 412, 421 (Minn.2005) (internal quotation marks omitted). The party challenging a statute's constitutionality bears the burden of establishing that the statute is unconstitutional beyond a reasonable doubt. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry,* 735 N.W.2d 713, 719 (Minn.2007).

The Fourteenth Amendment to the United States Constitution guarantees that no state will "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Minnesota Constitution also guarantees that "[n]o member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 1, § 2. We have observed that "[b]oth clauses have been analyzed under the same principles and begin with the mandate that all similarly situated individuals shall be treated alike, but only invidious discrimination is deemed constitutionally offensive." *Kolton v. County of Anoka,* 645 N.W.2d 403, 411 (Minn.2002) (internal quotation marks omitted).

 We must determine whether to apply strict scrutiny or rational basis review to Greene's equal protection claim. *See Erlandson v. Kiffmeyer,* 659 N.W.2d 724, 733 (Minn.2003). We apply strict scrutiny to a legislatively-created classification that involves a suspect classification or a fundamental right. *Bituminous Cas. Corp. v. Swanson,* 341 N.W.2d 285, 289 (Minn.1983). If strict scrutiny applies, the classification must be "narrowly tailored

and reasonably necessary to further a compelling governmental interest." *Hennepin County v. Perry,* 561 N.W.2d 889, 897 n. 7 (Minn.1997). If a constitutional challenge does not involve either a suspect classification or a fundamental right, we review the challenge using a rational basis standard. *Gluba,* 735 N.W.2d at 719.

 Greene makes two arguments supporting her claim that Minn.Stat. § 256J.645, subd. 4, is subject to strict scrutiny. She argues that the statute burdens her fundamental right to travel and that the statute involves a suspect racial classification.

### A. Fundamental Right

 Greene argues that Minn.Stat. § 256J.645, subd. 4, burdens her right to travel.[9] The right to travel is a fundamental right under the U.S. Constitution. *Mitchell v. Steffen,* 504 N.W.2d 198, 200 (Minn.1993); *Saenz v. Roe,* 526 U.S. 489, 500, 502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (explaining that the "right to travel" embraces (1) the right of a citizen of one state to enter and leave another state; (2) "the right to be treated as a welcome visitor rather than an unfriendly alien" when temporarily present in another state; and (3) the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same state). In *Saenz,* the Supreme Court concluded that a California statute limiting the maximum TANF benefits available to newly arrived residents violated the right to travel. Consistent with Supreme Court precedent,

---

9. The Commissioner has moved to strike the right-to-travel argument from Greene's brief on the ground that Greene waived this argument by failing to raise it at any stage of the proceedings before this appeal. Although we typically decline to consider issues raised for the first time on appeal, this is not an "ironclad rule." *Putz v. Putz,* 645 N.W.2d 343, 350 (Minn.2002). We are entitled to take any action as the interests of justice may require. Minn. R. Civ.App. P. 103.04. We address Greene's right-to-travel argument in the interests of justice. Therefore, we deny the Commissioner's motion to strike the argument from Greene's brief.

we have characterized the fundamental right to travel as a right of migration from state to state. *Mitchell*, 504 N.W.2d at 201; *see also Clayton v. Kiffmeyer*, 688 N.W.2d 117, 127 (Minn.2004) (indicating that the fundamental right to travel is a right to *interstate* travel). Essentially, Greene argues that strict scrutiny should apply because requiring her to travel to the closest tribal employment services location—which she claims is farther from her home than the closest county employment services location—burdens her right to travel. Because interstate travel is not at issue here, we conclude that Greene's right to travel argument lacks merit.

▮ Further, welfare benefits are not a fundamental right and "neither the State nor Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support." *Lavine v. Milne*, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). Congress also specifically provided that PRWORA "shall not be interpreted to entitle any individual or family to assistance under any State program funded under this part." 42 U.S.C. § 601(b) (2000). Therefore, this case does not involve a fundamental right.

### B. Suspect Classification

▮ Greene argues that Minn.Stat. § 256J.645, subd. 4, involves a suspect classification. The classification in Minn. Stat. § 256J.645, subd. 4, consists of identified members of a federally recognized tribe, who reside in the service area of a tribe that operates an employment services program under an agreement with the state. A law that differentiates based on race involves a suspect classification. *In re Harhut*, 385 N.W.2d 305, 310 (Minn. 1986). But when a classification is merely political, we apply rational basis review.

*Morton v. Mancari*, 417 U.S. 535, 554, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

In the seminal case of *Morton v. Mancari*, the United States Supreme Court considered the constitutionality of an employment preference for qualified Indians within the Bureau of Indian Affairs (BIA), authorized by the Indian Reorganization Act. 417 U.S. at 537, 94 S.Ct. 2474. The Court held that the employment preference based on membership in a recognized Indian tribe is a political classification subject to rational basis review. *Id.* at 553–55, 94 S.Ct. 2474. The Court explained that resolution of the issue "turns on the unique legal status of Indian tribes under federal law and upon the plenary power of Congress, based on a history of treaties and the assumption of a 'guardian-ward' status, to legislate on behalf of federally recognized Indian tribes." *Id.* at 551, 94 S.Ct. 2474. The Court distinguished between political and racial classifications, stating:

> The preference is not directed towards a "racial" group consisting of "Indians"; instead it applies only to members of "federally recognized" tribes. This operates to exclude many individuals who are racially to be classified as "Indians." In this sense, the preference is political rather than racial in nature.

*Id.* at 553 n. 24, 94 S.Ct. 2474. Thus, the political nature of the classification was based on the individual's membership in a quasi-sovereign political entity, rather than on the possibility that the individual could be racially classified as an American Indian. *Id.* at 554, 94 S.Ct. 2474.

Although *Mancari* considered a challenge to a classification contained in a federal law and relied on the unique obligation between Congress and federally recognized Indian tribes under the trust doctrine, state laws also can fall under the trust doctrine for purposes of equal protec-

tion analysis. Generally, courts have applied rational basis review to state laws that promote tribal self-governance, benefit tribal members, or implement or reflect federal laws. Felix S. Cohen, *Cohen's Handbook of Federal Indian Law* § 14.03[2][b][iii] (2005 ed.); *see, e.g., Washington v. Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 500–01, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979) (upholding Washington state law establishing jurisdiction over reservation lands on the basis that the state was legislating under authority granted by Congress in the exercise of its plenary power over Indian affairs); *Artichoke Joe's Cal. Grand Casino v. Norton,* 353 F.3d 712, 732 (9th Cir.2003) (upholding the constitutionality of tribal gaming compacts between California and federally recognized Indian tribes); *N.Y. Ass'n of Convenience Stores v. Urbach,* 92 N.Y.2d 204, 677 N.Y.S.2d 280, 699 N.E.2d 904, 908 (1998) (concluding that New York's failure to enforce the tax laws against on-reservation sales to non-Indians does not constitute a form of race-based discrimination, reasoning that the state may adopt laws and policies that reflect or effectuate federal laws designed to readjust the allocation of jurisdiction over Indians).

The MFIP statute is "not simply another state law," *Artichoke Joe's,* 353 F.3d at 733, but rather was a direct response to the federal government's enactment of PRWORA. By giving tribes the opportunity to operate their own TANF programs, TANF is widely viewed as a major step forward in tribal self-governance. Similarly, MFIP allows federally recognized tribes to administer aspects of Minnesota's TANF program. According to amici Minnesota Chippewa Tribe and Leech Lake Band of Ojibwe, the MFIP agreement and other state-tribe partnerships "encourage tribal sovereignty" and support tribal responsibility for the delivery of "efficient, comprehensive, and culturally-appropriate services to tribal members." Because the purpose of the statute is to further the congressional policy of tribal self-governance, we conclude that the classification is political rather than racial.

 We also conclude that rational basis review is appropriate because this case involves an intergovernmental agreement between the state and the Tribe that is consistent with federal policy. Greene does not dispute that the state and the Tribe have the right to enter into an agreement for the provision of employment services by the Tribe. As the Alaska Supreme Court has recognized, "the state has considerable latitude in dealing with recognized tribes as to matters of intersecting governmental concern when the state's actions rationally promote legitimate mutual governmental or proprietary interests." *Malabed v. North Slope Borough,* 70 P.3d 416, 426 n. 51 (Alaska 2003).

Greene argues that *Mancari* can be distinguished on the ground that it involved a true benefit to Indians, but the requirement that she receive employment services through the Tribe creates a hardship for her and denies her access to benefits. Greene is correct that *Mancari* involved a hiring and promotional preference for Indians. But the Supreme Court has expressly sanctioned both "preferences" and "disabilities" that "directly promot[e] Indian interests in self-government." *United States v. Antelope,* 430 U.S. 641, 646, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977). For example, the Supreme Court has held that members of a federally recognized tribe could be denied access to Montana state courts in connection with an adoption proceeding arising on the reservation. *Fisher v. Dist. Ct. of the Sixteenth Jud. Dist. of Mont.,* 424 U.S. 382, 390–91, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). Even though the

Indian plaintiffs were being denied a benefit or privilege available to non-Indians, the Supreme Court rejected their claims of racial discrimination, reasoning:

> The exclusive jurisdiction of the Tribal Court does not derive from the race of the plaintiff but rather from the quasi-sovereign status of the Northern Cheyenne Tribe under federal law. Moreover, even if a jurisdictional holding occasionally results in denying an Indian plaintiff a forum to which a non-Indian has access, such disparate treatment of the Indian is justified because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government.

*Id.* (citing *Mancari*, 417 U.S. at 551–55, 94 S.Ct. 2474). Therefore, even if requiring Greene to receive employment services through the Tribe could be characterized as a hardship in her individual circumstances, that hardship would not convert the political classification into a racial classification when the classification benefits the Tribe as a whole and furthers the policy of Indian self-government.

■ Further, Greene's claim of hardship is unsupported by the record and ignores aspects of the MFIP statutory scheme that are designed to avoid inequitable results. At the administrative hearing at which Greene challenged the reduction of her monthly MFIP benefits, she presented no evidence of hardship.[10] Also,

MFIP specifically provides a mechanism to avoid sanctions for failure to comply with program requirements because the recipient is unable to secure necessary transportation. *See* Minn.Stat. § 256J.57, subd. 1(5).

Greene next argues that *Mancari* is distinguishable on the ground that as a resident of Aitkin County, she is entitled to receive MFIP employment services through the County like any other county resident. She relies on *Jefferson v. Commissioner of Revenue*, 631 N.W.2d 391 (Minn.2001), to support her argument. In *Jefferson*, the Indian plaintiffs, who were enrolled members in a federally recognized tribe residing off the reservation, argued that imposing the state's income tax on payments the plaintiffs received through authorized gaming operations of their tribe violated their rights to equal protection. *Id.* at 394, 397. The plaintiffs argued that "an unlawful racial classification exists because the State of Minnesota differentiates between those Indians who reside on the reservation within the state, and those Indians who reside off the reservation within the state." *Id.* at 397. We rejected the plaintiffs' equal protection argument on the ground that "[b]y taxing Indians who live outside Indian country, the state is not singling them out based on race, but is treating them like every other individual within its taxing jurisdiction." *Id.* Based on this decision, Greene argues that, if the

---

**10.** On appeal, Greene alleged for the first time that because the distance from her home to the nearest tribal employment services location is greater than the distance from her home to the nearest county employment services location, she is disadvantaged by the mandatory referral. Essentially, Greene is arguing that requiring her to receive employment services through the Tribe is inequitable because of this difference in distance. The Commissioner asserts, however, that had Greene presented evidence of hardship, the state "would have offered evidence to show

that tribal service employees travel to meet tribal participants, that MFIP recipients may look for work anywhere they choose, and that Aitkin County has a work-seeking facility operated by the Northeastern Minnesota Office of Job Training that is open to any person looking for a job." But none of these representations are part of the record and, therefore, are not properly before us. Therefore, we do not consider how these factors might affect the resolution of Greene's equal protection claim.

state may tax Indian citizens who reside off the reservation, then the state should be required to provide MFIP employment services to those Indian citizens on the same basis as non-Indian citizens.

We disagree. *Jefferson* did not involve a comprehensive scheme of state benefits that provides tribes with access to state and federal funds to implement state programs for their members. The MFIP statutory scheme benefits tribes and their members by providing tribes with greater opportunities for self-government and enabling tribes to offer employment services tailored to the needs of their members on and off the reservation. Moreover, no MFIP benefits have been denied to Greene. The county pays cash benefits and implements many other aspects of MFIP. The statutory provision at issue here simply designates where Greene can access employment services. Because Greene is a member of a federally recognized tribe that provides employment services and lives in the service area of the Tribe, the statute requires her to receive those services through the Tribe, rather than the county.

Therefore, we conclude that the statutory classification of tribal members belonging to a federally recognized tribe and living in the tribal service area is a political rather than a racial classification. Because the political classification in Minn. Stat. § 256J.645, subd. 4, is not a suspect classification for purposes of equal protection, we apply rational basis review to Greene's claim.

## III.

 Finally, we address whether the classification in Minn.Stat. § 256J.645, subd. 4, satisfies the rational basis test under the United States and Minnesota Constitutions. We have applied two rational basis tests. *Kolton v. County of Anoka*, 645 N.W.2d 403, 411 (Minn.2002). Under the federal test, the court determines whether the challenged classification has "a legitimate purpose" and whether it was "reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose." *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

 Under the Minnesota test, we require that:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991) (citations omitted). The "key distinction" between the two tests is that "under the Minnesota test 'we have been unwilling to hypothesize a rational basis to justify a classification, as the more deferential federal standard requires.'" *State v. Garcia*, 683 N.W.2d 294, 299 (Minn. 2004) (quoting *Russell*, 477 N.W.2d at 889). "Instead, we have required a reasonable connection between the actual, and not just the theoretical, effect of the challenged classification and the statutory goals." *Russell*, 477 N.W.2d at 889.

In this case, the resolution of Greene's equal protection claim does not depend upon which formulation of the rational ba-

sis test applies. Therefore, we apply the Minnesota rational basis test, which is "a more stringent standard of review." *Russell*, 477 N.W.2d at 889.

First, we consider whether the distinctions in Minn.Stat. § 256J.645, subd. 4, are "genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs." *Russell*, 477 N.W.2d at 888. The classification at issue here consists of "Indian tribal members receiving MFIP benefits and residing in the service area of an Indian tribe operating employment services under an agreement with the commissioner." Minn.Stat. § 256J.645, subd. 4. We conclude that the distinctions in the statute are legitimate. Tribes have "plenary and exclusive power over their members," but a tribe's authority over members of another Indian tribe and non-Indians is limited. *See* Cohen, *supra*, § 4.01[1][b], at 210. Further, extending a tribe's service area outside the boundaries of the reservation is well accepted under federal law. In *Mancari*, the Supreme Court noted that "[l]iterally every piece of [federal] legislation dealing with Indian tribes and reservations ... single[s] out for special treatment a constituency of tribal Indians living on *or near reservations*." *Morton v. Mancari*, 417 U.S. 535, 552, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (emphasis added). Under PRWORA, tribes operating tribal TANF programs have the discretion to define the tribal TANF service area to include any "near reservation" areas and even beyond "near reservation" areas, as long as the tribe has the administrative capacity to serve such areas. 45 C.F.R. § 286.75(e) (2007); *see* 42 U.S.C. § 612.

Second, we consider whether the distinctions in section 256J.645 are "genuine or relevant to the purpose of the law." *Russell*, 477 N.W.2d at 888. We conclude

that the distinctions are relevant to the legislative goals of providing culturally appropriate services to tribal members and promoting tribal self-government. *See* Minn.Stat. § 256J.315 (requiring county agencies to "cooperate with tribal governments in the implementation of MFIP to ensure that the program meets the special needs of persons living on Indian reservations"). The statute enables tribes to provide culturally relevant programs and services to all members living in proximity to the reservation. By giving tribes the funds and flexibility to develop and administer their own TANF employment services programs, section 256J.645 also promotes tribal self-government. *Cf. Mancari*, 417 U.S. at 554, 94 S.Ct. 2474 (upholding constitutionality of BIA employment preference as an "employment criterion reasonably designed to further the cause of Indian self-government and to make the BIA more responsive to the needs of its constituent groups"). Further, the referral requirement assures the viability and success of the tribal program.

Finally, we consider whether the purpose of the statute is "one that the state can legitimately attempt to achieve." *Russell*, 477 N.W.2d at 888. The goals of providing culturally appropriate services and promoting tribal self-government are legitimate governmental interests. *See Mancari*, 417 U.S. at 555, 94 S.Ct. 2474. And there is no claim here that the state lacks the authority to enter into an agreement with the Tribe to provide employment services under MFIP.

We therefore conclude that the distinctions in Minn.Stat. § 256J.645, subd. 4, satisfy the equal protection requirements of both the U.S. and Minnesota Constitutions. For the reasons discussed, Greene's equal protection challenge fails. We af-

firm the Commissioner's reduction of Greene's MFIP benefits.

Affirmed.

ANDERSON, G. BARRY, Justice (dissenting).

Although I do not disagree with the majority's constitutional analysis, I respectfully dissent from the majority's statutory analysis. In holding that Minn.Stat. § 256J.645, subd. 4 (2006), prohibits Greene from receiving employment services through Aitkin County, the majority ignores the plain language of and reads an exclusivity requirement into the Minnesota Family Investment Program (MFIP) statute. Because I believe that the plain language of MFIP entitles Greene to receive employment services through Aitkin County, I would reverse the decision of the court of appeals.

MFIP requires counties to "develop and provide an employment and training services component which is designed to put participants on the most direct path to unsubsidized employment."[1] Minn.Stat. § 256J.50, subd. 1(a) (2006). The proper starting point for determining whether Greene is entitled to receive employment services through Aitkin County is not, as the majority believes, section 256J.645, subd. 4, but Minn.Stat. § 256J.10 (2006), which provides as follows: "To be eligible for MFIP, applicants must meet the general eligibility requirements in sections 256J.11 to 256J.15, the property limitations in section 256J.20, and the income limitations in section 256J.21." Respondents concede that Greene satisfies the eligibility requirements for receipt of MFIP benefits; therefore, she is entitled to the same employment services as are other participants unless specifically excluded by statute.

Minnesota Statutes § 256J.645, subd. 1 (2006), allows the Commissioner of the Minnesota Department of Human Services (Commissioner) or a designated representative to "enter into agreements with federally recognized Indian tribes with a reservation in the state to provide MFIP employment services to members of the Indian tribe and to other caregivers who are a part of the tribal member's MFIP assistance unit." In a reservation grant contract executed with the State of Minnesota, the Minnesota Chippewa Tribe agreed to provide MFIP employment services to individuals in the tribe's service delivery area. The statute at the heart of the parties' dispute is section 256J.645, subd. 4, which reads, "Indian tribal members receiving MFIP benefits and residing in the service area of an Indian tribe operating employment services under an agreement with the commissioner *must be referred* by county agencies in the service area to the Indian tribe for employment services." (Emphasis added.)

I agree with the majority that "must" is a mandatory term, *see* Minn.Stat. § 645.44, subd. 15a (2006), but the mandate applies to county agencies, not to tribal members. Section 256J.645, subd. 4, requires county agencies to refer tribal members to their tribes for employment services, but there is no corresponding provision divesting tribal members of their right, granted under MFIP, to receive employment services through their counties. The hearing referee correctly interpreted section 256J.645, subd. 4, as follows:

> While the statute imposes a duty upon the county to make referrals to tribal employment services when a participant is deemed eligible, there is no require-

---

1. " 'Employment and training services' means programs, activities and services that are designed to assist participants in obtaining and retaining employment." Minn.Stat. § 256J.49, subd. 3 (2006).

ment that an eligible participant utilize that service simply because [he or she is] eligible. Likewise, the fact that the tribal employment services program cannot refuse to provide eligible participants services, does not in turn create a requirement that an eligible participant utilize those services. [Greene], like any citizen of Aitkin County, should be able to access county employment services. Because the county has not provided those services to her, there has been [n]o failure to comply and any sanction on that basis should be reversed.

The majority claims that Greene's argument is premised on reading a right to "opt out" into the silence of section 256J.645, subd. 4. The usage of the phrase "opt out" reflects the majority's failure to interpret MFIP in its entirety. The issue is not whether Greene is entitled to "opt out" of section 256J.645, subd. 4, but whether the statute specifically excludes her from receiving the same employment services as other MFIP participants.

The majority cites Minn.Stat. § 256J.645, subd. 2 (2006), for the proposition that tribes assume the responsibility of providing MFIP employment services to tribal members when the tribes enter into employment services agreements with the Commissioner. While it is true that section 256J.645, subd. 2, requires tribes to "agree to fulfill the responsibilities provided under the employment services component of MFIP regarding operation of MFIP employment services," the statute contains no requirement that tribes "assume" the duty of providing MFIP employment services to the exclusion of counties. Section 256J.645, subd. 2, sets forth what tribes are required to do, but it in no way limits the services to which tribal members are entitled. I would not read this "assumption" language into the statute.

My conclusion that section 256J.645, subd. 4, does not prohibit tribal members from receiving employment services through their counties is supported by other MFIP provisions. Minnesota Statutes § 256J.315 (2006), for example, requires county and tribal governments to cooperate in the implementation of MFIP as follows:

> The county agency must cooperate with tribal governments in the implementation of MFIP to ensure that the program meets the special needs of persons living on Indian reservations. *This cooperation must include, but is not limited to, the sharing of MFIP duties including* initial screening, orientation, assessments, and *provision of employment and training services.* The county agency shall encourage tribal governments to assume duties related to MFIP and shall work cooperatively with tribes that have assumed responsibility for a portion of the MFIP program to expand tribal responsibilities, if that expansion is requested by the tribe.

(Emphasis added.) The requirement that county agencies and tribal governments share the provision of employment services belies the majority's interpretation of section 256J.645, subd. 4.

Furthermore, Minn.Stat. § 256J.50, subd. 8 (2006), provides that counties are generally required to provide participants a choice between at least two employment and training service providers:

> Each county, or group of counties working cooperatively, shall make available to participants the choice of at least two employment and training service providers ..., except in counties utilizing workforce centers that use multiple employment and training services, offer

multiple services options under a collaborative effort and can document that participants have choice among employment and training services designed to meet specialized needs.[2]

An exception to the section 256J.50, subd. 8, requirement applies where "a county . . . explains in the [biennial service agreement] that the provision of alternative employment and training service providers would result in financial hardship for the county." Minn.Stat. § 256J.50, subd. 9 (2006). The fact that MFIP participants are generally entitled to choose between at least two employment service providers suggests that the legislature did not intend to exclude tribal members from receiving employment services through their counties. The presumption should be that more options—not fewer—are available to MFIP participants.

Had the legislature intended to prohibit tribal members from receiving employment services through their counties, it could have said so. It did not, and it is not our prerogative to read an exclusivity requirement into Minn.Stat. § 256J.645, subd. 4. *See Reiter v. Kiffmeyer,* 721 N.W.2d 908, 911 (Minn.2006) ("[W]e will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently."). Accordingly, I would reverse the decision of the court of appeals and hold that the plain language of MFIP entitles Greene to receive employment services through Aitkin County.

PAGE, J. (dissenting).

I join in the dissent of Justice G. Barry Anderson.

ANDERSON, PAUL H., J. (dissenting).

I join in the dissent of Justice G. Barry Anderson.

PAGE, Justice (dissenting).

I respectfully dissent. While I join Justice G. Barry Anderson's dissent, I write separately to note my disagreement with the court's analysis of the constitutional issues raised by Greene. There is, however, no need for an extensive discussion of that disagreement because this case can be resolved on statutory grounds. It is enough to say that the notion that a citizen of this state, of this nation, can be disenfranchised on the basis of his or her political classification is stunning.

---

**2.** Likewise, Minn.Stat. § 256J.50, subd. 4 (2006), states as follows: "Unless the provisions of subdivision 8 apply, a county must select at least two employment and training service providers. A county may opt to provide services on its own as one of these providers."