PAGE, Justice
(dissenting).
I respectfully dissent. I do so because I conclude that the presumption of palpable unfitness in Minn.Stat. § 260C.301, subd. 1(b)(4) (2012), does not survive strict scrutiny.
R.D.L. faced a termination of parental rights hearing with respect to her four oldest children because she was engaging in illegal activity in their presence and failed to comply with her case plan. In re Welfare of Children of R.D.L., Nos. 27-JV-11-8351, 27-JV-12-4240, Order at 2 (Henn. Cnty.Dist.Ct. filed Aug. 28, 2012). Before the hearing, R.D.L. gave birth to another child. Hennepin County proposed that it would not use the termination proceeding relating to the four oldest children as a basis for terminating R.D.L.’s parental rights to her newborn child if R.D.L. agreed to voluntarily terminate her parental rights to her four oldest children. R.D.L. rejected the County’s proposal and, after the hearing, had her parental rights to the four oldest children involuntarily terminated. Subsequently, the County filed a petition to terminate R.D.L.’s parental rights to the newborn. At trial, the County, relying on Minn.Stat. § 260C.301, subd. 1(b)(4), alleged that R.D.L. was “palpably unfit” to parent her newborn. Section 260C.301, subdivision 1, provides that a parent is presumed to be palpably unfit if the parent’s rights to another child were previously involuntarily terminated. In response, R.D.L. moved to declare the statutory presumption unconstitutional under the equal protection provisions of the United States and Minnesota Constitutions. The district court denied the motion and terminated R.D.L.’s parental rights to the newborn. The court of appeals affirmed. Here, R.D.L. contends that Minn.Stat. § 260C.301, subd. 1(b)(4), which does not apply to demonstrably unfit parents who voluntarily terminated their parental rights, is not narrowly tailored because the statute is underinclusive. R.D.L. also contends that this classification does not serve, a compelling government interest.
I.
The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, “No state shall ... deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const. amend. XIV, § 1. Article I, Section 2, of the Minnesota Constitution provides, “No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of *139 his peers.” “Both clauses have been analyzed under the same principles and begin with the mandate that all similarly situated individuals shall be treated alike, but only ‘invidious discrimination’ is deemed constitutionally offensive.” Scott v. Minneapolis Police Relief Ass’n, 615 N.W.2d 66, 74 (Minn.2000) (citation omitted). We typically review equal protection challenges under the rational basis standard. Id. If the classification involves a suspect class or fundamental right, however, we apply the strict scrutiny standard. Greene v. Comm’r of Dep’t of Human Servs., 755 N.W.2d 713, 725 (Minn.2008). Because this case involves a fundamental right — the right of parents to make decisions on “the care, custody, and control” of their children — strict scrutiny applies. SooHoo v. Johnson, 731 N.W.2d 815, 820 (Minn.2007). Strict scrutiny is the most rigorous standard applied in equal protection cases. Kahn v. Griffin, 701 N.W.2d 815, 831 (Minn.2005); see Fullilove v. Klutznick, 448 U.S. 448, 519, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) (Marshall, J., concurring) (“ ‘[SJtrict scrutiny’ ... is strict in theory, but fatal in fact.”). To survive strict scrutiny, the statute “must be ‘narrowly tailored and reasonably necessary to further a compelling governmental interest.’ ” Greene, 755 N.W.2d at 725 (quoting Hennepin Cnty. v. Perry, 561 N.W.2d 889, 897 n. 7 (Minn.1997)). Strict scrutiny in the context of fundamental rights focuses on whether the classification itself serves a compelling government interest, not whether the statute as a whole serves such an interest. See Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541-42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).
II.
Here, the classification is between parents who have in the past voluntarily terminated their parental rights and parents who have previously had their parental rights involuntarily terminated. Under Minn.Stat. § 260C.301, subd. 1(b)(4), parents in the latter group are presumed to be palpably unfit to parent their children while no such presumption applies to parents in the former group. The court identifies the compelling government interest in having the presumption as the prompt and permanent removal of children from unsafe parents. The court concludes that the classification is narrowly tailored because the district court retains discretion over whether to terminate parental rights, the parent can easily rebut the presumption, and the presumption does not shift the burden of proof from the County. Essentially, the court reasons that because the impact of the presumption is what the court concludes is minimal and, because procedural protections are in place, the statute is narrowly tailored. The court ignores the fact that encompassed within the narrowly tailored requirement is the additional requirement that a statute can be neither overinclusive nor underinclu-sive. See Austin v. Mich. Chamber of Commerce, 494 U.S. 652, 666, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990), overruled on other grounds by Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).
R.D.L. argues that the classification in Minn.Stat. § 260C.301, subd. 1(b)(4), is un-derinclusive because it does not include parents who have voluntarily terminated their parental rights to other children. A statute is “overinclusive” if it “burden[s] more persons than necessary to cure the problem.” Black’s Law Dictionary 1279 (10th ed.2014). A statute is underinclusive if it excludes persons that it should not. See Orr v. Orr, 440 U.S. 268, 272, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (“In every equal protection attack upon a statute challenged as underinclusive, the State may satisfy the Constitution’s commands *140 either by extending benefits to the previously disfavored class or by denying benefits to both parties_”).
I conclude that the classification in Minn.Stat. § 260C.301, subd. 1(b)(4), is un-derinclusive because there is no compelling reason to exclude from the presumption of palpable unfitness parents who have in the past voluntarily terminated their parental rights. First, many parents who voluntarily terminate their rights satisfy the standards for involuntary termination.[1] In such cases, the only distinction between the two classes of parents is that parents whose rights were involuntarily terminated invoked their right to a hearing. See Murphy v. Comm’r of Human Servs., 765 N.W.2d 100, 107 (Minn.App.2009) (“In theory, there is a difference between a voluntary and involuntary termination of parental rights, but in actual practice, exactly the same conduct by a parent toward a child can lead to either a voluntary or an involuntary termination....”). Second, it is not uncommon that parents voluntarily relinquish their rights to a child for reasons that would support an involuntary termination. See, e.g., In re Welfare of D.D.G., 558 N.W.2d 481, 486 (Minn.1997) (concluding that good cause existed for voluntary termination because of the parents’ abusive relationship and drug use); In re Welfare of Children of D.F., 752 N.W.2d 88, 92, 95 (Minn.App.2008) (holding that good cause was present because the parents had not completed their case plans and were chemically dependent); In re Welfare of Child of R.A.S., No. A07-297, 2007 WL 2367554, at *2 (Minn.App. Aug. 16, 2007) (concluding that abandonment constitutes good cause).
Perhaps the best example of the lack of distinction between the two classifications as it relates to the asserted government interest in creating the two classes is R.D.L. herself. Had R.D.L. agreed to Hennepin County’s proposal and voluntarily waived her parental rights to her four older children, the statutory presumption of palpable unfitness would not have applied to her newborn child. But having rejected the offer, the presumption applied. In both cases, however, the facts with respect to R.D.L.’s ability to parent her newborn are exactly the same. Thus, I can see no compelling reason or government interest in treating the two classifications of parents differently. Indeed, it would appear that the only reason for treating the two classes of parents differently is to put pressure on parents to voluntarily terminate their parental rights rather than asserting their right to a hearing and putting the government to its proof. Put another way, R.D.L. could have fit into either classification without any impact on her parental fitness or circumstances. This illustrates that the principal distinction between parents who voluntarily terminated their parental rights and parents, like R.D.L. here, whose rights are involuntarily terminated, is that parents in the latter group simply refuse to voluntarily terminate their rights. Because the distinction between the two classes of parents is marginal at best, the presumption of palpable unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4), should apply to parents who have voluntarily terminated their rights. Since it does not, the presumption is underinclusive.
III.
Even if a statute is underinclusive, ‘“perfection is by no means required.’” Vance v. Bradley, 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (quoting Phillips Chem. Co. v. Dumas Indep. Sch. Dist., 361 U.S. 376, 385, 80 S.Ct. 474, 4 *141 L.Ed.2d 384 (1960)). íhe U.S. Supreme Court has upheld an uiiderinblusive or ov-erinclusive statute if the statute otherwise meets the appropriate level of scrutiny. See id. (“We accept Such iihperfection because it is in turn rátionally related to the secondary objective of legislative convenience.”). As indicated above, the applicable level of scrutiny here is strict scrutiny, which requires that the classification be narrowly tailored and reasonably necessary to meet a compelling governmental interest. Greene v. Comm’r of Dep’t of Human Servs., 755 N.W.2d 713, 725 (Minn.2008).
According to the court, the compelling government interest served by the statutory presumption at issue is “protecting children” by “facilitating] more expeditious resolution of eases involving children in need of protection.” While the protection of children is a compelling government interest, the court ignores the well-recognized principle that the classification itself, not the statute, must serve a compelling government interest. See Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). Thus, the County must articulate a compelling government interest that is furthered by applying Minn.Stat. § 260C.301, subd. 1(b)(4), to orte class of parents and not the other. I surmise that if the State has a compelling interest in quickly removing children from parents whose rights have been involuntarily terminated, the State has an equally compelling interest in quickly removing children from parents who voluntarily terminated their rights since parents who voluntarily terminate their rights often satisfy the standards for involuntary termination. This case illustrates why the State's interests do not change simply because a parent has voluntarily terminated her parental rights. The juvenile ceürt presumed R.D.L. to be palpably uhfit to care for her newborn because R.D.L.’s parental rights with respect to her oldest children had been involuntarily terminated. The County advocates that it had a compelling government interest in expeditiously protecting the newborn from an unsafe situation. But, had R.D.L. accepted the County’s offer to voluntarily terminate her parental rights to her oldest children, the palpably unfit presumption would not have applied with respect to her newborn. Nevertheless, if the newborn needed protection from an unsafe environment, that need would not have dissipated simply because R.D.L. had agreed to voluntarily terminate her parental rights to her other children. R.D.L.’s history and parental fitness, and the newborn’s need for protection, were the same irrespective of how R.D.L.’s rights to her other children were terminated. Thus, if the State has an interest in protecting children when the presumption applies, I see no reason for the State’s interest to be any less simply because a parent had in the past accepted the County’s offer to voluntarily terminate his or her rights to other children. ■ Since the State has an equal interest in quickly removing children from parents who voluntarily terminated their rights to other children, there is no compelling government interest that is furthered by applying Minn.Stat. § 260C.301, subd. 1(b)(4), to one class of parents and not the other.
Moreover, despite the articulated goal of expediting the removal of children in need of protection, the classification simply does not accomplish that goal. Here, R.D.L. faced two separate termination proceedings, one relating to her four oldest children in which the presumption was not applicable and one relating to her newborn child in which the presumption was applicable.
With respect to R.D.L.’s four oldest children, the County filed a child in need of *142 protection or services (CHIPS) petition on September 15, 2011. The court terminated R.D.L.’s parental rights to her four oldest children on August 28, 2012, 11 months after the petition was filed. With respect to R.D.L.’s newborn child, the County filed a CHIPS petition on August 30, 2012. At this point, the County had the benefit of having already gathered ample evidence regarding R.D.L.’s parental fitness, and the County could rely on Minn.Stat. § 260C.301, subd. 1(b)(4), to help prove that R.D.L. was palpably unfit to care for her newborn child. However, even with sufficient evidence and with the presumption in place, the process of terminating R.D.L.’s parental rights was anything but prompt. The hearing to consider the termination of R.D.L.’s parental rights did not occur until July 31, 2013, and R.D.L.’s parental rights were not finally terminated until August 16, 2013, one year after the petition was filed. Given the fact that it took longer to terminate R.D.L.’s parental rights to her newborn with the presumption in place than it did to terminate R.D.L.’s parental rights to her older children without the presumption, it is fair to say that neither the statutory presumption nor the classification did anything to expedite the termination of R.D.L.’s parental rights to her newborn child. Thus, it is clear that the classification as applied to the presumption is not reasonably necessary to meet a compelling government interest.
Finally, I note that the court holds that to rebut the presumption “the parent needs to produce only enough evidence to support a finding that the parent is ‘suitable to be entrusted with the care’ of the children.” The court characterizes this standard as “a much lower bar than the ‘clear and convincing’ standard” the County must meet. If a parent is easily able to rebut the presumption of palpable unfitness, parents will often succeed in meeting this burden; therefore, the presumption will frequently be of little utility to the County. If the presumption often has little utility, then there is no compelling government interest.
IV.
While the court is correct that strict scrutiny applies to the classification at issue and that parents whose parental rights are involuntarily terminated are similarly situated to parents who voluntarily terminate their parental rights, the court’s conclusion that the classification survives strict scrutiny is erroneous.

. The children of these parents have no less a need for protection.